Girard SHARP, Appellant,

v.

The STATE of Texas, Appellee.

No. 164–82.

Court of Criminal Appeals of Texas.

En Banc.·

Sept. 26, 1984.

Allen C. Isbell, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Janiece Longoria, Molly Naylor and Mary Milloy, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON COURT'S MOTION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

This is an appeal from a conviction for the offense of possession of methamphetamine, wherein the court assessed punishment of five years' confinement, probated. The Ninth Supreme Judicial District Court of Appeals, Beaumont, affirmed in *Sharp v. State*, 628 S.W.2d 138 (Tex.App.—Beaumont, 1982). We granted discretionary review without petition on this Court's own motion,[1] to review the Court of Appeals' determination that a deputy municipal court clerk is authorized under Texas law to issue a capias writ commanding the arrest of an individual accused of a misdemeanor offense without intervention at any point in the process by a detached and neutral magistrate to determine the existence, if any, of probable cause to arrest.

Appellant was subjected to arrest and an incident search by Houston police after an investigatory stop and check of appellant's driver's license number revealed an outstanding "Texas Capias Arrest Warrant" in appellant's name. The capias reflects that it was issued in order that appellant be produced to answer a charge of violating the motorcycle "Safety Helmet Law."[2] However, at the hearing on appellant's motion to suppress evidence, both defense counsel and the prosecution made it clear that the writ was in fact issued by a deputy municipal court clerk based on that clerk's determination that appellant had failed to appear in a Houston Municipal Court for a hearing on the traffic offense.

The Court of Appeals, in rejecting appellant's contention that the capias was flawed, found that:

"The procedure in Houston Municipal Courts regarding the issuance of a copy (sic-capias), including the one here involved, is as follows: The officer submits the ticket. A clerk types up the complaint and swears to it. The person swearing to it has no knowledge of the offense itself. The clerk swearing to it does not even have a conversation with the officer. If a person does not appear in court, a capias Texas Warrant of Arrest is issued. The clerk has the authority to stamp and issue the capias."

We simply cannot agree with the holding of the Court of Appeals.

Texas municipal court clerks are empowered to perform the ministerial task of issuing process under the personal direction of a municipal judge, but they are neither authorized to act as magistrates nor trained in the art of determining probable cause to arrest or search. Article 2.09

---

1. Our authority to grant discretionary review on the Court's own motion is based on Article 5, Section 5 of the Texas Constitution; Article 44.-45a V.A.C.C.P.; and Texas Criminal Appeals Rule 303.

2. Appellant was cited for a violation of Article 6701(c)–3 as amended in 1977, otherwise known as "Protective Headgear Legislation", but referred to in the citation as "helmet law violation." Acts 1977, 65th Leg., page 332, chapter 162, section 1, effective August 29, 1977.

of the Code of Criminal Procedure quite clearly spells out "Who are Magistrates" in Texas:

"Each of the following officers is a magistrate within the meaning of this Code: The justices of the Supreme Court, the judges of the Court of Criminal Appeals, the justices of the Courts of Appeals, the judges of the District Court, the magistrates appointed by the judges of the district courts of Dallas County that give preference to criminal cases and the judges of the criminal district courts of Dallas County, the county judges, the judges of the county courts at law, judges of the county criminal courts, the justices of the peace, the mayors and recorders of the judges of the municipal courts of incorporated cities or towns."

True, in *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972), the Supreme Court held that municipal court clerks in Florida could constitutionally issue warrants for the arrest of those charged with having breached municipal ordinances of the City of Tampa. However, the Tampa clerks were authorized under local law to issue arrest warrants and, more importantly, were found by the Court to be *independent* judicial officers:

"In some cases the term 'judicial officer' appears to have been used interchangeably with that of 'magistrate.' *Katz v. United States*, 389 U.S. 347, 356, 88 S.Ct. 507 [514], 19 L.Ed.2d 576, 585 (1967), and *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948). In others, it was intended simply to underscore the now accepted fact that someone independent of the police and prosecution must determine probable cause. *Jones v. United States*, 362 U.S. 257, 270, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 707 (1960); *Wong Sun v. United States*, 371 U.S. 471, 481–82, 83 S.Ct. 407, 414, 9 L.Ed.2d 441, 451 (1963). The very term 'judicial officer' implies, of course, some connection with the judicial branch. But it has never been held that only a lawyer or judge could grant a warrant, regardless of the court system or the type of warrant involved...." Id. at 407 U.S. 348, 92 S.Ct. 2122.

The Court set out the tests an issuing "magistrate" or "judicial officer" must meet:

"He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search." Id. at 407 U.S. 350, 92 S.Ct. 2123.

The municipal court clerks of the City of Tampa performed the function of issuing warrants with the requisite degree of detachment from police and prosecutors:

"The requisite detachment is present in the case at hand. Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement. There has been no showing whatever here of partiality, or affiliation of these clerks with prosecutors or police. The record shows no connection with any law enforcement activity or authority which would distort the independent judgment the Fourth Amendment requires." Id. at 407 U.S. 350–351, 92 S.Ct. 2122–2123.

That is not the case here. In the Houston Municipal Courts, the clerks, in drawing up the complaints, assume the role of a prosecutor, and act as police officers or complaining witnesses in swearing to the complaints. They do not act as magistrates. Their ministerial issuance of warrants is part of a procedure authorized by a general directive from the presiding judge of Houston's municipal courts. The testimony of Mr. Olivo, Manager of Administration of the Operation Section of the Houston Municipal Courts, illustrates this when he discusses the issuance of the capias in this case under Judge Felix Stanley's authority by a clerk using a signature stamp:

DEFENSE COUNSEL:

"Q. Mr. Olivo, this wasn't even in Judge Stanley's Court, is that correct?

"A. It was in a night Court, Judge Stanley has no Court.

"Q. And the Clerk did not appear in the night court?

"A. That is correct.

"Q. So this Clerk here gets this ticket from the night court and stamps Judge Stanley's stamp on the warrant, is that correct?

"A. That is right.

"Q. So Judge Stanley wasn't even there in the courtroom at the time, is that correct also?

"A. That is right.

"Q. So he would have no independent knowledge of this in any way?

"A. That is correct."

\* \* \* \* \* \*

PROSECUTION:

"Q. Mr. Olivo, is the 'Judge Stanley' stamp stamped at the very moment that the failure to appear is determined?

"A. No ma'am, there is a process involved in which this would be done; at the end of two days, anywhere from two days on, after the failure to appear.

"Q. Okay, so it was brought to Judge Stanley's attention that there was a failure to appear, and he is the one who ordered and directed that this be done?

"A. Not to his personal attention, no.

"Q. Okay, then how is the directive gone out?

"A. The directive would have gone out, we have a number of cases that have come before us on which we have to issue capias, and the capias is issued by the Clerk of the Court; he has the cases on file with his signature.

"Q. And that capias is based on that Clerk's personal knowledge of the Defendant's failure to appear?

"A. That is correct.

"Q. All right, and then that capias goes to Judge Stanley?

"A. No ma'am, they are held for a day to give these people an opportunity to come in, and if they don't show up in twenty-four hours then we submit them to another division who prepares the warrants.

"Q. Okay, but the original process is activated by the Clerk of the Court after the Defendant failed to appear?

"A. That is correct.

"Q. And then after all the procedures have gone through, and that time has elapsed, Judge Stanley directs that a capias be issued?

"A. He directs that we issue a capias out for him."

\* \* \* \* \* \*

DEFENSE COUNSEL:

"Q. That is a general direction to all of the Clerks, is that correct sir?

"A. That is correct.

\* \* \* \* \* \*

"Q. So this is more of a clerical type thing, is that correct?

"Q. Yes sir.

"Q. The Clerk decides to issue the warrant at that time, based on his authority to issue a warrant when he sees fit; that would be about correct, would it not sir?

"A. The Clerk issues it on the failure to appear, that is correct."

▮ Contrary to the State's assertion and the above testimony, appellant was never *charged* with the misdemeanor offense of "Bail Jumping and Failure to Appear," V.T.C.A., Penal Code, Section 38.11. No complaint instituting that prosecution sworn to by a municipal court clerk appears in the record, and no evidence was offered to show that a municipal court judge personally directed his clerk to issue a capias for the appellant's failure to appear in court to answer the underlying traffic offense. Instead, on its face, the capias states that it was issued to arrest appellant for violating the misdemeanor "helmet safety law." Throughout Olivo's testimony, the State attempted but failed to show an iota of judicial intervention in the process whereby a capias for appellant was issued. Unfortunately, the process as described seems designed to insulate the

magistrates from the entire procedure.[3] As a result, no judicial determination of probable cause to issue a Capias Texas Warrant of Arrest was ever made for any purpose.

■ The State argues that probable cause to arrest the appellant on the initial charge of the misdemeanor traffic law violation was determined by the arresting officer. The State's brief recites that the appellant's misdemeanor prosecution was not instituted by the filing of the capias, but was instituted at the time the officer determined probable cause to stop and arrest the appellant for permitting a passenger to ride on his motorcycle without the protective headgear then required. Thus, the State urges that this case does not run afoul of the probable cause requirements of either the United States Constitution or the Texas Constitution:

> "... [I]n those limited situations in which probable cause on the initial charge has been determined by a magistrate, the grand jury, *or an arresting officer*, it is suggested that the clerk has the authority to determine probable cause for the violation of a court procedure, as in the case at bar." State's Brief at page 6 (Emphasis Added).

■ The Supreme Court has long insisted that before a person's liberty or privacy may be invaded there must be provided a fair and reliable determination of probable cause by a neutral and detached magistrate, a judicial officer, *Gerstein v. Pugh*, 420 U.S. 103, 112, 95 S.Ct. 854, 862, 43 L.Ed.2d 54, 64 (1975); *Shadwick v. City of Tampa*, 407 U.S. 345, 350, 92 S.Ct. 2119, 2121, 32 L.Ed.2d 783, 788 (1972); *Smyth v. State*, 634 S.W.2d 721, 723 (Tex.Cr.App. 1982), "instead of being judged by the officer engaged in the often competitive enter-

prise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948). Moreover, the misdemeanor prosecution was *instituted* by the filing of the complaint sworn to by the municipal court clerk in this case and not by the officer's traffic citation as the State suggests. See, Article 45.01, V.A.C.C.P.

■ The Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution both provide that no warrant shall issue except on probable cause. As part of this guarantee a warrant for arrest is to be issued only after a detached and neutral magistrate determines that there is probable cause to issue it. *Coolidge v. New Hampshire*, 403 U.S. 443, 453, 91 S.Ct. 2022, 2031, 29 L.Ed.2d 564, 575 (1971). The State's argument fails to recognize that for purposes of constitutional scrutiny, there is no substantive difference between an arrest warrant and a capias. See, *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Smart v. Jones*, 530 F.2d 64, 66 (5th Cir.1976); *Knox v. State*, 586 S.W.2d 504, 508 (Tex.Cr.App.1979).

■ We find this case undistinguishable from *Crane v. Texas*, CA-3-80-0978-G (November 30, 1981, N.D.Tex.), holding that the clerks in the Dallas County Clerk's office did not have the authority to issue initial warrants of arrest after the filing of a complaint by a district attorney. In *Crane*, Judge Higginbotham addressed the requirement for a probable cause determination prior to the issuance of a misdemeanor capias under Texas law, read in its proper matrix of common law and constitutional standards. Although recognizing that the Texas statutory scheme authoriz-

---

**3.** Because there is no evidence that the underlying traffic complaint was ever brought for a hearing before *any* magistrate, appellant was never found guilty of the underlying traffic offense and Article 45.51, V.A.C.C.P., is inapplicable. The article provides that "[i]f the defendant is not in custody when the judgment is rendered, the court may order a capias issued for his arrest." Moreover, the failure of the

municipal court clerks to ever bring the complaint before a magistrate based on the procedure employed by the Houston Municipal Courts precludes the possible decision of the magistrate to issue a summons instead of a warrant, as the State might request, given the nature of the offense. See, Article 23.04, V.A.C.C.P.

**518**

ing capias does not by its express terms require a probable cause determination:

"Article 23.04 of the Texas Criminal Code provides that '[i]n misdemeanor cases the capias or summons shall issue from a *court* having jurisdiction of the case.' At the same time, Article 23.03 provides that 'A capias shall be immediately issued by the *district clerk* upon each indictment for *felony* presented....' (emphasis supplied). As will be seen, this difference between 23.03 and 23.04 makes sense when read against the common law rules, and the Texas rules, of arrests for misdemeanors and felonies and explains Article 23.01 which defines capias '... as a writ issued by the court or clerk,' and directed to any peace officer of the State of Texas, commanding him to arrest a person accused of an offense and bring him before that court immediately....' The explanation is that the scheme presupposes an awareness that valid capias can issue only upon properly determined probable cause. In the case of a felony that determination is made by the grand jury in its decision to indict and it may be issued by the court clerk. With a misdemeanor capias issues not from a county clerk but from a *court* with jurisdiction over the case. I conclude then that Texas law requires that to be valid a misdemeanor capias must be issued from a court with jurisdiction over the case after a determination by a neutral magistrate of probable cause." Id. at page 5.

Judge Higginbotham's conclusion is inescapably correct, and we adopt it as our own. To do otherwise would render the statutory scheme unconstitutional.

■ The failure to have a magistrate determine probable cause for the arrest of the appellant, and the failure of a magistrate to direct the issuance of a capias for appellant's arrest renders the capias void and appellant's arrest illegal. The evidence discovered as a direct result of that arrest must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The judgments below

are reversed, and the cause remanded to the trial court.

MILLER, Judge, concurring.

I concur in the result but would adopt the concurring opinion of Judge Roberts in *Knox v. State*, 586 S.W.2d 504, 506 (Tex.Cr. App.1979), as the rationale.