**228**

John H. METZ, Plaintiff–Appellant,

v.

The SUPREME COURT OF OHIO, et al., Defendants–Appellees.

No. 01–3149.

United States Court of Appeals, Sixth Circuit.

Aug. 19, 2002.

Before SILER, COLE and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff John H. Metz, a Cincinnati attorney licensed to practice law in the State of Ohio, appeals from the order granting the motions filed by Defendants, the Supreme Court of Ohio, et al., dismissing his complaint alleging a violation of 42 U.S.C. § 1983 wherein he challenged actions tak-

en by Defendants when he attempted to file a merits brief on behalf of a client in an appeal before the Ohio Supreme Court. For the reasons set forth below, we **AFFIRM** the district court's judgment.

## BACKGROUND

### A. Procedural History

On July 3, 2000 Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 against Defendants, the Supreme Court of Ohio and its individual justices, Supreme Court Clerks Marcia Mengel and Mary Ann Dix, and Attorney General Betty D. Montgomery. According to a rule promulgated by the Ohio Supreme Court, Ohio S.Ct. Prac. R. XIV, pleadings received in its Clerk's Office after 5:00 p.m. will not be filed until the next business day. Plaintiff's complaint alleged that on July 1, 1998 the Supreme Court of Ohio refused to accept his merits brief, which he attempted to file on behalf of a client whom he was representing in a malpractice action before the Supreme Court, even though he claimed to have presented the brief before the 5:00 p.m. filing deadline. As a result, the appeal in the underlying malpractice action was dismissed.

In an amended complaint, Plaintiff alleges, in pertinent part, that Ohio S.Ct. Prac. R. XIV violates the Ohio Constitution by allowing non-judicial officers to determine what pleadings will be placed before the court. Plaintiff also alleges that Ohio S.Ct. Prac. R. XIV violates prior case law of the Ohio Supreme Court. In addition, Plaintiff claims that the rule violates the Due Process Clause of the Fourteenth Amendment by vesting judicial power in the hands of non-judicial officers. Plaintiff also alleges that, as an attorney, his due process rights were violated because he has a property right in practicing law and in having access to the courts in the State of Ohio. Plaintiff further claims that the

enforcement of Ohio S.Ct. Prac. R. XIV violates the Privileges and Immunities Clauses of the U.S. Constitution. In his amended complaint, Plaintiff sought an injunction prohibiting the Ohio Supreme Court from allowing its non-judicial employees to wield judicial power, a ruling that Ohio S.Ct. Prac. R. XIV is unconstitutional as applied, and monetary damages, including punitive damages, against Defendants Dix and Mengel.

On July 27, 2000, Attorney General Montgomery filed an unopposed motion to dismiss the claims against her, claiming that Plaintiff's complaint failed to state any specific allegations against her. The remaining Defendants filed a motion for judgment on the pleadings on August 30, 2000, claiming that Plaintiff's complaint failed to state a claim upon which relief could be granted. In particular, the Ohio Supreme Court claimed sovereign immunity under the Eleventh Amendment for itself and its members. Defendants also requested the dismissal of Plaintiff's state-law claims, alleging lack of subject-matter jurisdiction. Defendants further claimed that Plaintiff's claims based upon due process and the Privileges and Immunities Clauses failed to state claims for which relief can be granted, and thus should be dismissed as well.

Plaintiff responded on September 20, 2000 with a memorandum in opposition to Defendants' motion for a judgment on the pleadings and moved to amend his complaint. In his brief, Plaintiff argued that the district court had jurisdiction to provide injunctive relief against the Ohio Supreme Court and its individual members. Plaintiff also claimed that the Ohio Supreme Court waived its sovereign immunity with respect to Defendants Dix and Mengel because Ohio law requires the Clerk of the Ohio Supreme Court to post a bond. Thereafter, on November 3, 2000,

Plaintiff filed an amended complaint clarifying that the individual justices of the Ohio Supreme Court were being sued in their official capacities only for purposes of injunctive relief and that Defendants Dix and Mengel were being sued in their individual and official capacities. In response, Defendants filed a motion to dismiss the amended complaint on November 14, 2000.

In an opinion and order filed on January 16, 2001, the district court dismissed the claims against Attorney General Montgomery and granted in part both Defendants' motion to dismiss and their motion for judgment on the pleadings, specifically finding that Plaintiff had no standing to assert his due process claims and, alternatively, that no due process violations occurred. The district court also dismissed with prejudice Plaintiff's claim alleging deprivation of privileges and immunities under the Fourteenth Amendment and Article IV, § 2 of the United States Constitution. The district court further ruled that it lacked subject-matter jurisdiction over Plaintiff's state-law claims and declined to exercise supplemental jurisdiction over them. Plaintiff filed a timely notice of appeal from the district court's order.

### B. Substantive History

Plaintiff's appeal arises from his attempt to file a merits brief with the Supreme Court of Ohio on behalf of a client in a malpractice case. Plaintiff claims that a Supreme Court clerk refused to accept the merits brief when it was presented to her before the 5:00 p.m. filing deadline on July 1, 1998. Defendants counter that the clerk refused to accept the brief because it was presented after the 5:00 p.m. filing deadline had passed. It is undisputed that pursuant to Ohio S.Ct. Prac. R. XIV (1)(A), pleadings received after 5:00 p.m. are not filed until the next business day. Under Ohio S.Ct. Prac. R. XIV, no brief shall be filed with the Supreme Court after the established deadline, and the Clerk of the Court is directed to refuse to file any untimely pleading.

According to Plaintiff, when he entered the building in Columbus, Ohio where the Supreme Court is located on July 1, 1998, he asked the security guard who stopped him to check his identification if it was after 5:00 p.m., and the guard responded, "No." Plaintiff then proceeded to the Supreme Court's Clerk's Office located on the third floor of the building. Upon entering, Plaintiff noticed that two employees were "gather[ing] their things together to leave," and another employee, Defendant Mary Ann Dix, the Deputy Clerk, was talking on the telephone. When Dix got off the phone, Plaintiff offered to submit the brief for filing, believing that he had beaten the 5:00 p.m. deadline. Dix, however, informed Plaintiff that it was after 5:00 p.m. and that the Clerk's Office would not accept any filings for the day. According to Plaintiff, he pointed out that several clocks in the office indicated that it was 4:58 p.m. or 4:59 p.m., but that it was definitely not after 5:00 p.m. Dix then told Plaintiff that once the computers were turned off, the Clerk would not accept any filings and that the computers were now off. Amended Complaint, ¶¶ 9–13. According to Plaintiff, he beseeched Dix to be reasonable, but she responded that "the clerk decides what time it is." Amended Complaint, ¶ 14.

Plaintiff then asked to speak with Dix's superior, Defendant Marcia Mengel, the Clerk of the Ohio Supreme Court. After Dix told Plaintiff that Mengel had given her complete discretion over filings with the court, she nonetheless agreed to accept a copy of Plaintiff's brief to be filed as of the next business day, but told him that it would be returned to him showing that it

had not been timely filed. On the way out of the building, Plaintiff stopped at the security checkpoint and noted that, according to the sign-in log, the security guard had checked him at 4:58 p.m.

The next day Plaintiff called the Clerk's Office and asked to speak with Mengel, but was told that she was on an extended leave of absence. Thereafter, Plaintiff talked with Dix, who again told him about the Ohio Supreme Court's filing rules, informing Plaintiff that his brief would be returned to him stamped late. On July 9, 1998, the Clerk's Office returned the brief to Plaintiff, with the handwritten note that it was "[r]eceived in the clerk's office after 5:00 p.m. on July 1, 1998." (J.A. at 52.)

On July 16, 1998, Plaintiff attempted to file several motions on behalf of his client with the Supreme Court, including a motion to grant emergency relief, a motion to file a merits brief and supplement instanter, a motion not to dismiss appeal, a motion to order correction of the docket, and a motion to issue mandate to the clerk to file relator's merits brief and supplement. On the following day, Plaintiff received in the mail a "Judgment Entry," reflecting the *sua sponte* dismissal of his client's appeal for failure to file "a merit brief, due July 1, 1998." (J.A. at 52–53.) Thereafter, Plaintiff drafted a motion for reconsideration and mailed it to the Clerk's Office via Federal Express on July 20, 1998. Plaintiff's timely motion for reconsideration with the Supreme Court was also rejected by the Clerk's Office. Plaintiff also alleges that he filed "writs of Prohibition and Mandamus as original actions with the Ohio Supreme Court to address this very case and all actions were dismissed and not heard on the merits." Original Complaint, ¶ 49. Nearly two years later, on July 3, 2000, Plaintiff commenced the present action.

## DISCUSSION

### A. Standard of Review

This Court reviews *de novo* a district court's dismissal of a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *Performance Contracting, Inc. v. Seaboard Sur. Co.*, 163 F.3d 366, 369 (6th Cir.1998). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. This Court "take[s] the plaintiff's factual allegations as true and if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then . . . dismissal is proper." *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir.1996).

### B. Analysis

■ In this case, the district court did not err in granting Defendants' motions to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. First, the district court properly concluded that Plaintiff lacked standing to assert his due process claims. As Defendants point out, a plaintiff's standing under Article III is a component of a federal court's subject-matter jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit."); *TCG Detroit v. City of Dearborn*, 206 F.3d 618, 622 (6th Cir.2000). In *Deja Vu of Nashville, Inc. v. Metro. Gov. of Nashville and Davidson County, Tennessee*, 274 F.3d 377, 389 (6th Cir.2001), this Court stated the requirements for establishing standing under Article III as follows:

To satisfy Article III's standing requirement, (1) a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; (2) the injury must be "fairly traceable" to the challenged action; and (3) there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. *See Coyne v. American Tobacco Co.,* 183 F.3d 488, 494 (6th Cir.1999). The Supreme Court has further defined the injury-in-fact requirement by stating that a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). *Deja Vu,* 274 F.3d at 389. "Hypothetical injury does not equal injury-in-fact." *Id.* (citing *Lujan,* 504 U.S. at 560). To establish the injury-in-fact prong, the injury must generally be to the complaining party. *Warth,* 422 U.S. at 499 ("The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.' ")

In this case, Plaintiff cannot show that he has suffered a concrete, particularized invasion of a legally protected interest. Although Plaintiff's client in the underlying state court action suffered an apparent injury when his appeal of the malpractice action was dismissed due to Plaintiff's failure to file a timely merits brief on his behalf, Plaintiff's client is not the complaining party in the present action. *Id.* Here, Plaintiff has only shown that he suffered a "conjectural" or "hypothetical"

injury. As the district court noted, excluding the possibility of having to defend himself against a malpractice action because of his failure to file his client's brief in a timely fashion, Plaintiff suffered "no discernible due process injury." Because the risk of having to defend against a potential malpractice action brought by his former client constitutes merely "conjectural" or "hypothetical" injury, Plaintiff fails to satisfy the first requirement for standing. *Deja Vu,* 274 F.3d at 389 (citing *Lujan,* 504 U.S. at 560).

■ However, even if Plaintiff were able to establish an injury-in-fact and that his presumed injury were "fairly traceable" to the challenged action in this case, he cannot establish that there is a substantial likelihood that the relief requested will redress or prevent his injury. In his amended complaint, Plaintiff seeks (1) an injunction prohibiting the Ohio Supreme Court from allowing its clerks to enforce its procedural rules, (2) a ruling that the Ohio Supreme Court's Rules of Practice XI(2)(C) and XIV(1)(C) are unconstitutional, and (3) further relief, including punitive damages, against Defendants Dix and Mengel, as may be appropriate. However, as Defendants point out, it is not clear that the requested relief would redress Plaintiff's injury of not being allowed to file his client's brief in the Supreme Court on July 1, 1998.

■ Nonetheless, Plaintiff rejoins that, as a lawyer, he has standing to advance the rights of his client. In *Powers v. Ohio,* 499 U.S. 400, 410–11, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court explained the requirements for *jus tertii* standing as follows:

In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of

third parties. This fundamental restriction on our authority admits of certain, limited exceptions. We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: The litigant must have suffered an injury-in-fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to .the third party's ability to protect his or her interests.

*Powers*, 499 U.S. at 410–11 (footnote, citations and quotation marks omitted); *see also Tesmer v. Granholm*, 114 F.Supp.2d 603, 608–10 (E.D.Mich.2000) (collecting cases). In particular, Plaintiff relies upon *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), where the Supreme Court, applying the three factor test stated in *Powers*, found that the petitioner attorney had *jus tertii* standing to assert the constitutional rights of his client, who was unable to pay his attorney fees because his assets were forfeited because they were found to have derived from drug-law violations. In that case, the Supreme Court found that the petitioner had standing on the ground that the attorney-client relationship is "one of special consequence" and that the statute might have materially impaired the client's ability to exercise his constitutional rights." *Caplin*, 491 U.S. at 624, n. 3; *see also Tesmer*, 114 F.Supp.2d at 610–11 (finding that attorneys who earned a portion of their incomes taking assigned appeals for trial and plea-based convictions had standing to challenge constitutionality of practice of denying appellate counsel to indigent Michigan defendants who pleaded guilty or nolo contendere).

However, in this case, Plaintiff cannot satisfy any of the three requirements for *jus tertii* standing. First, Plaintiff, as the litigant, has not "suffered some injury-in-fact, adequate to satisfy Article III's case-or-controversy requirement." *Caplin*, 491 U.S. at 624, n. 3. Further, even assuming that Plaintiff has suffered such an injury-in-fact, prudential considerations counsel against *jus tertii* standing in this case. Specifically, it is not apparent that Plaintiff has a sufficiently close relationship with the third party (his former client) such that the latter was prevented from exercising his own rights to protect his interests. Although the attorney-client relationship between Plaintiff and his client is, "like the doctor-patient relationship ... one of special consequence," the *jus tertii* doctrine is not available to Plaintiff in this instance because there was nothing that prevented his client from suing on his own behalf. *Cf. Eisenstadt v. Baird*, 405 U.S. 438, 443–446, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (finding that a medical doctor had standing to assert the rights of unmarried persons denied access to contraceptives).

■ In any event, even assuming *arguendo* that Plaintiff had standing to assert his due process claims, he has failed to state a claim upon which relief can be granted. First, Plaintiff cannot show that he was denied the due process of law on the ground that the Ohio Supreme Court's vested judicial authority in a non-judicial officer. As pointed out by the district court, there was no apparent due process violation when a clerk of the court is entrusted to make the determination whether Plaintiff's merits brief was filed in accordance with the applicable rules of practice governing the Supreme Court of Ohio. In reaching this conclusion, the district court relied upon the U.S. Supreme Court's decision in *Shadwick v. City of Tampa*, 407 U.S. 345, 351–52, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972), holding that a municipal ordinance allowing the clerk

of the court to issue arrest warrants for breaches of other municipal ordinances did not violate the Fourth Amendment. Specifically, the district court noted that *Shadwick* permitted the clerks in Tampa to make determinations of probable cause for arrest based upon affidavits "whether there was probable cause to believe a citizen guilty of impaired driving, breach of peace, drunkenness, trespass, or the multiple other common offenses covered by a municipal code." *Shadwick*, 407 U.S. at 352. In *Shadwick*, the Court, finding that "[t]here has been no showing that this is too difficult a task for a clerk to accomplish," held that the Tampa clerks could determine probable cause for arrest under the ordinance. *Shadwick*, 407 U.S. at 352. Thus, the district court properly reasoned:

> If a clerk of court can be entrusted to issue an arrest warrant, which places a person's liberty at stake, within the bounds of the Fourth Amendment, then this Court can see no reason a clerk of court cannot be entrusted, within the limits of the Due Process Clause, to make the determination whether an appellant's merit brief was filed in accordance with the applicable rule of practice.

The cases cited by Plaintiff in support of his position are easily distinguishable or fail to show that he was denied the due process of law on the ground that the Ohio Supreme Court's vested judicial authority in a non-judicial officer. For example, Plaintiff relies upon *McCray v. Maryland*, 456 F.2d 1 (4th Cir.1972) for the proposition that a court clerk can be liable under 42 U.S.C. § 1983 when the clerk impedes the filing of papers. However, in *McCray*, the Fourth Circuit, declining to extend the protection afforded by the doctrine of absolute immunity to lesser judicial personnel, held that a court clerk is not entitled to a grant of absolute immunity as a "qua-

si-judicial" officer with respect to filing papers. *Id.* at 3–4. Indeed, the Fourth Circuit pointed out that such clerical duties are merely ministerial and thus not deserving of being cloaked with judicial immunity. If anything, *McCray* rebuts Plaintiff's claim that the action of a court clerk in filing papers amounts to a function vested with "judicial authority."

Plaintiff's reliance upon *Loya v. Desert Sands Unified High Sch. Dist.*, 721 F.2d 279 (9th Cir.1983) is also misplaced. In *Loya*, the Ninth Circuit found that it was error to dismiss a Title VII claim as time barred because the claim arrived at the clerk's office within the 90–day limitation period. In *Loya*, the clerk refused to file the complaint because it was typed on 8-½ by 13 inch paper in violation of a local court rule requiring 8-½ inch by 11 inch paper. There, the Ninth Circuit noted:

> To uphold the Clerk's rejection of it would elevate to the status of a jurisdictional requirement a local rule designed merely for the convenience of the court's own record keeping. While such interests are important, local rules to serve them should not be applied in a manner that defeats altogether a litigant's right to access to the court.

*Loya*, 721 F.2d at 280. The instant case is clearly distinguishable from *Loya*, since the Supreme Court of Ohio's rule of practice is simply not comparable to the local rule in that case. Here, Plaintiff's filing of the merits brief in the underlying case was deemed untimely because it was filed after the deadline. Similarly, Plaintiff's citation to *McDowell v. Delaware State Police*, 88 F.3d 188 (3d Cir.1996) in this regard is misplaced. In that case, the Third Circuit found that the court clerk should have accepted the complaint, as it was filed within the applicable limitations period.

■ Plaintiff also cannot show that he suffered a due process injury resulting from the enforcement of Rule XIV. Reading the rule in its entirety, the district court pointed out that Rule XIV(3)(B)(2)(a) allows parties to file a one-time stipulation for a twenty-day extension to file a merits brief, if it is otherwise filed within the time the brief is due. Moreover, Rule XIV(3)(B)(2)(b) permits a ten-day extension upon a showing of good cause in the event that there is no stipulation. In addition, a party is permitted under Rule XIV(1)(B)(1)(a) to file pleadings by facsimile transmission, thus eliminating the need to rush to the courthouse at the last minute. As the district court rightly pointed out: "Plaintiff has not explained why he did not pursue any of these other options for filing his brief, but his failure to file his client's brief in compliance with the rules is completely a problem of his own making." Thus, given that "Rule of Practice XIV leaves open several avenues for filing briefs which Plaintiff apparently failed to utilize," the district court properly concluded that there was no due process violation.

■ Plaintiff also cannot show that the enforcement of Rule XIV affected his right to practice law or his access to the courts as a practicing lawyer. In a word, Plaintiff alleges no facts showing that he was prevented, or will be prevented, from practicing law. Thus, the district court properly concluded that "Rule of Practice XIV did not deprive Plaintiff of his right to practice law nor [did it] close the door to the courthouse."

■ Plaintiff also fails to state a claim that he was deprived of any privilege or immunity secured by either the Fourteenth Amendment or Article IV, § 2 of the United States Constitution. As the district court properly stated: "The right to practice law is not a privilege or immunity secured by the Fourteenth Amend-

ment." *See In re Griffiths,* 413 U.S. 717, 719 n. 4, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973) (finding that the holding of *Bradwell v. State,* 16 Wall. 130, 83 U.S. 130, 21 L.Ed. 442 (1872) "was simply that the right to practice law is not a 'privilege or immunity' within the meaning of the Fourteenth Amendment"); *Saier v. State Bar of Michigan,* 293 F.2d 756, 759 (6th Cir.1961)(noting that "[t]he right to practice law in the state courts [is] not a privilege or immunity of a citizen of the United States")(quoting from *In ex parte Lockwood,* 154 U.S. 116, 117, 14 S.Ct. 1082, 38 L.Ed. 929 (1894)). The district court also properly found that the Privileges and Immunities Clause of Article IV, § 2, which prevents states from discriminating against citizens of another state, has no application to this case because Plaintiff is an Ohio lawyer and cannot claim discrimination on this basis. As the Court noted in *Zobel v. Williams,* 457 U.S. 55, 59 n. 5, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982),

> The statute does not involve the kind of discrimination which the Privileges and Immunities Clause of Art. IV was designed to prevent. That Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell,* 334 U.S. 385, 395, 68 S.Ct. 1156, 1161, 92 L.Ed. 1460 (1948). The Clause is thus not applicable to this case.

457 U.S. at 59 n. 5

■ In addition, Plaintiff's claims against the Supreme Court of Ohio and its officials are barred by the Eleventh Amendment. *See Federal Maritime Comm'n v. South Carolina State Ports Auth.,* — U.S. ——, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("It is clear, of course, that in the absence of

consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). While the Eleventh Amendment by its own terms does not bar suits against a state by one of its own citizens, an unconsenting state is nonetheless immune from suits filed in federal court by one of its own citizens as well as by citizens of another state. *Edelman v. Jordan,* 415 U.S. 651, 663–64, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Here, the district court properly found that the Ohio statute requiring the Clerk of the Supreme Court to post a bond is not a waiver of the state's Eleventh Amendment sovereign immunity because the statute does not specify the state's intention to subject itself to suit in federal court.[1] *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) ("In order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court.") Thus, to the extent that Plaintiff is seeking retroactive relief in the form of an injunction or relief in the form of a monetary judgment against the individual Defendants, such relief is barred by the Eleventh Amendment.

Finally, because the district court properly dismissed Plaintiff's federal claims, it properly declined to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c)(3). *Hankins v. The Gap,* 84 F.3d 797, 802–03 (6th Cir.1996)(noting that "generally, if the federal claims are dismissed before trial ... the state claims should be dismissed as well") (citations and internal quotation marks omitted). Thus,

Plaintiff's claims alleging that Rule XIV violated the Ohio Constitution or Ohio Supreme Court precedent were properly dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, we therefore **AFFIRM** the district court's judgment.

---

1. Ohio Revised Code § 2503.06 merely requires the clerk to post a bond "conditioned upon the faithful discharge of the duties of his office." Ohio Revised Code § 2503.07 states that "[t]he clerk shall be responsible for the neglect of duty or misconduct in office of a deputy." In this regard, Plaintiff does not cite to any statutory language specifically indicating the State of Ohio's intent to waive its immunity under the Eleventh Amendment.