## SHADWICK *v.* CITY OF TAMPA

No. 71–5445.   Argued April 10, 1972—Decided June 19, 1972

POWELL, J., delivered the opinion for a unanimous Court.

*Daniel A. Rezneck* argued the cause for appellant. With him on the briefs was *Malory B. Frier*.

*Gerald H. Bee, Jr.,* argued the cause for appellee. With him on the brief was *William Reece Smith, Jr.*

MR. JUSTICE POWELL delivered the opinion of the Court.

The charter of Tampa, Florida, authorizes the issuance of certain arrest warrants by clerks of the Tampa Municipal Court.[1]   The sole question in this case is whether

---

[1] The relevant Florida statute and Tampa charter provisions are set forth below:

.1. Section 168.04 of Fla. Stat. (1965) reads as follows:

"The clerk may administer an oath to and take affidavit of any person charging another with an offense by breach of an ordinance, and may issue a warrant to the marshal to have the accused person arrested and brought before the mayor for trial.   The marshal may, in the absence of the mayor and clerk from the police station, ad-

these clerks qualify as neutral and detached magistrates for purposes of the Fourth Amendment. We hold that they do.

Appellant was arrested for impaired driving on a warrant issued by a clerk of the municipal court. He moved the court to quash the warrant on the ground that it was issued by a nonjudicial officer in violation of the Fourth and Fourteenth Amendments. When the motion was denied, he initiated proceedings in the Florida courts by means of that State's writ of common-law certiorari. The state proceedings culminated in the holding of the Florida Supreme Court that "[t]he clerk and deputy clerks of the municipal court of the City of Tampa are neutral and detached 'magistrates' . . . for the purpose of issuing arrest warrants within the requirements of

---

minister oaths to affidavits of complaints and issue warrants for the arrest of persons complained against."

2. Section 495 of the Charter of the City of Tampa enacted by the legislature of the State of Florida in Section 17, Chapter 5363, Laws of Florida 1903, reads as follows:

"The Chief of Police, or any policeman of the City of Tampa, may arrest, without warrant, any person violating any of the ordinances of said city, committed in the presence of such officer, and when knowledge of the violation of any ordinance of said city shall come to said chief of police or policeman, not committed in his presence, he shall at once make affidavit, before the judge or clerk of the municipal court, against the person charged with such violation, whereupon said judge or clerk shall issue a warrant for the arrest of such person."

3. Section 160 of the Charter of the City of Tampa enacted by the legislature of the State of Florida in Section 1, Chapter 61–2915, Laws of Florida 1961, reads as follows:

"The city clerk of the City of Tampa, with the approval of the mayor, may appoint one or more deputies, such deputy or deputies to be selected from the approved classified list of the city civil service, and to have and exercise the same powers as the city clerk himself, including but not limited to the issuance of warrants. One or more of such deputies may be designated as clerks of the municipal court."

the United States Constitution . . . ." 250 So. 2d 4, 5 (1971). We noted probable jurisdiction, 404 U. S. 1014 (1972).

## I.

A clerk of the municipal court is appointed by the city clerk from a classified list of civil servants and assigned to work in the municipal court. The statute does not specify the qualifications necessary for this job, but no law degree or special legal training is required. The clerk's duties are to receive traffic fines, prepare the court's dockets and records, fill out commitment papers and perform other routine clerical tasks. Apparently he may issue subpoenas. He may not, however, sit as a judge, and he may not issue a search warrant or even a felony or misdemeanor arrest warrant for violations of state laws. The only warrants he may issue are for the arrest of those charged with having breached municipal ordinances of the city of Tampa.[2]

Appellant, contending that the Fourth Amendment requires that warrants be issued by "judicial officers," argues that even this limited warrant authority is constitutionally invalid. He reasons that warrant applications of whatever nature cannot be assured the discerning, independent review compelled by the Fourth Amendment when the review is performed by less than a judicial officer.[3] It is less than clear, however, as to who would qualify as a "judicial officer" under appellant's theory. There is some suggestion in appellant's brief that a judicial officer must be a lawyer or the municipal court judge himself.[4] A more complete portrayal of appellant's position would be that the Tampa clerks are disqualified as judicial officers not merely because they are not lawyers

---

[2] Tr. of Oral Arg. 6, 7, 20, 21.

[3] Brief for Appellant 6; Tr. of Oral Arg. 10.

[4] Brief for Appellant 12–13; Reply Brief for Appellant 8.

or judges, but because they lack the institutional independence associated with the judiciary in that they are members of the civil service, appointed by the city clerk, "an executive official," and enjoy no statutorily specified tenure in office.[5]

## II

Past decisions of the Court have mentioned review by a "judicial officer" prior to issuance of a warrant, *Whiteley* v. *Warden,* 401 U. S. 560, 564 (1971); *Katz* v. *United States,* 389 U. S. 347, 356 (1967); *Wong Sun* v. *United States,* 371 U. S. 471, 481–482 (1963); *Jones* v. *United States,* 362 U. S. 257, 270 (1960); *Johnson* v. *United States,* 333 U. S. 10, 14 (1948). In some cases the term "judicial officer" appears to have been used interchangeably with that of "magistrate." *Katz* v. *United States, supra,* and *Johnson* v. *United States, supra.* In others, it was intended simply to underscore the now accepted fact that someone independent of the police and prosecution must determine probable cause. *Jones* v. *United States, supra; Wong Sun* v. *United States, supra.* The very term "judicial officer" implies, of course, some connection with the judicial branch. But it has never been held that only a lawyer or judge could grant a warrant, regardless of the court system or the type of warrant involved. In *Jones, supra,* at 270–271, the Court implied that United States Commissioners, many of whom were *not* lawyers or judges, were nonetheless "independent judicial officers." [6]

The Court frequently has employed the term "magistrate" to denote those who may issue warrants. *Coolidge* v. *New Hampshire,* 403 U. S. 443, 449–453 (1971); *Whiteley* v. *Warden, supra,* at 566; *Katz* v. *United States, supra,* at 356–357; *United States* v. *Ventresca,* 380 U. S. 102, 108

---

[5] Reply Brief for Appellant 8; Tr. of Oral Arg. 10–12.

[6] The United States Commissioner system has, of course, been replaced by the Federal Magistrates Act of 1968, 82 Stat. 1107.

(1965); *Giordenello* v. *United States,* 357 U. S. 480, 486 (1958); *Johnson* v. *United States, supra,* at 13–14; *United States* v. *Lefkowitz,* 285 U. S. 452, 464 (1932). Historically, a magistrate has been defined broadly as "a public civil officer, possessing such power, legislative, executive or judicial, as the government appointing him may ordain," *Compton* v. *Alabama,* 214 U. S. 1, 7 (1909), or, in a narrower sense "an inferior judicial officer, such as a justice of the peace." *Ibid.* More recent definitions have not much changed.[7]

An examination of the Court's decisions reveals that the terms "magistrate" and "judicial officer" have been used interchangeably. Little attempt was made to define either term, to distinguish the one from the other, or to advance one as the definitive Fourth Amendment requirement. We find no commandment in either term, however, that all warrant authority must reside exclusively in a lawyer or judge. Such a requirement would have been incongruous when even within the federal system warrants were until recently widely issued by nonlawyers.[8]

---

[7] In *Compton,* a notary public was deemed a "magistrate," but the Court has nowhere indicated that the term denotes solely a lawyer or judge.

Webster's Dictionary (2d ed. 1957), defines magistrate as "[a] person clothed with power as a public civil officer; a public civil officer invested with executive or judicial powers . . ." or, more narrowly, "[a] magistrate of a class having summary, often criminal, jurisdiction, as a justice of the peace, or one of certain officials having a similar jurisdiction . . . ." Random House Dictionary (1966) defines magistrate as (1) "a civil officer charged with the administration of the law" and (2) "a minor judicial officer, as a justice of the peace or a police justice, having jurisdiction to try minor criminal cases and to conduct preliminary examinations of persons charged with serious crimes."

[8] United States Commissioners were not required to be lawyers until passage of the Federal Magistrates Act of 1968. Even under this Act, a limited exception to lawyer's status is afforded part-time magistrates. 28 U. S. C. § 631 (b)(1).

To attempt to extract further significance from the above terminology would be both unnecessary and futile. The substance of the Constitution's warrant requirements does not turn on the labeling of the issuing party. The warrant traditionally has represented an independent assurance that a search and arrest will not proceed without probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime. Thus, an issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search. This Court long has insisted that inferences of probable cause be drawn by "a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson* v. *United States, supra,* at 14; *Giordenello* v. *United States, supra,* at 486. In *Coolidge* v. *New Hampshire, supra,* the Court last Term voided a search warrant issued by the state attorney general "who was actively in charge of the investigation and later was to be chief prosecutor at the trial." *Id.,* at 450. If, on the other hand, detachment and capacity do conjoin, the magistrate has satisfied the Fourth Amendment's purpose.

## III

The requisite detachment is present in the case at hand. Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement. There has been no showing whatever here of partiality, or affiliation of these clerks with prosecutors or police. The record shows no connection with any law enforcement activity or authority which would distort the independent judgment

the Fourth Amendment requires. Appellant himself expressly refused to allege anything to that effect.[9] The municipal court clerk is assigned not to the police or prosecutor but to the municipal court judge for whom he does much of his work. In this sense, he may well be termed a "judicial officer." While a statutorily specified term of office and appointment by someone other than "an executive authority" might be desirable, the absence of such features is hardly disqualifying. Judges themselves take office under differing circumstances. Some are appointed, but many are elected by legislative bodies or by the people. Many enjoy but limited terms and are subject to re-appointment or re-election. Most depend for their salary level upon the legislative branch. We will not elevate requirements for the independence of a municipal clerk to a level higher than that prevailing with respect to many judges. The clerk's neutrality has not been impeached: he is removed from prosecutor or police and works within the judicial branch subject to the supervision of the municipal court judge.

Appellant likewise has failed to demonstrate that these clerks lack capacity to determine probable cause. The clerk's authority extends only to the issuance of arrest warrants for breach of municipal ordinances. We presume from the nature of the clerk's position that he would be able to deduce from the facts on an affidavit before him whether there was probable cause to believe a citizen guilty of impaired driving, breach of peace, drunkenness, trespass, or the multiple other common offenses covered by a municipal code. There has been no showing that this is too difficult a task for a clerk to accomplish. Our legal system has long entrusted non-

---

[9] Tr. of Oral Arg. 10.

lawyers to evaluate more complex and significant factual data than that in the case at hand. Grand juries daily determine probable cause prior to rendering indictments, and trial juries assess whether guilt is proved beyond a reasonable doubt. The significance and responsibility of these lay judgments betray any belief that the Tampa clerks could not determine probable cause for arrest.

We decide today only that clerks of the municipal court may constitutionally issue the warrants in question. We have not considered whether the actual issuance was based upon an adequate showing of probable cause. *Aguilar* v. *Texas,* 378 U. S. 108 (1964). Appellant did not submit this question to the courts below, 237 So. 2d 231 (1970), 250 So. 2d 4 (1971), and we will not decide it here initially. The single question is whether power has been lawfully vested, not whether it has been constitutionally exercised.

Nor need we determine whether a State may lodge warrant authority in someone entirely outside the sphere of the judicial branch. Many persons may not qualify as the kind of "public civil officers" we have come to associate with the term "magistrate." Had the Tampa clerk been entirely divorced from a judicial position, this case would have presented different considerations. Here, however, the clerk is an employee of the judicial branch of the city of Tampa, disassociated from the role of law enforcement. On the record in this case, the independent status of the clerk cannot be questioned.

What we do reject today is any *per se* invalidation of a state or local warrant system on the ground that the issuing magistrate is not a lawyer or judge. Communities may have sound reasons for delegating the responsibility of issuing warrants to competent personnel other than judges or lawyers.[10] Many municipal courts face

---

[10] Some communities, such as those in rural or sparsely settled

stiff and unrelenting caseloads.[11]   A judge pressured with
the docket before him may give warrant applications
more brisk and summary treatment than would a clerk.
All this is not to imply that a judge or lawyer would
not normally provide the most desirable review of war-
rant requests.   But our federal system warns of convert-
ing desirable practice into constitutional commandment.
It recognizes in plural and diverse state activities [12] one

---

areas, may have a shortage of available lawyers and judges and must
entrust responsibility for issuing warrants to other qualified persons.
The Federal Magistrates Act, for example, explicitly makes provision
for nonlawyers to be appointed in those communities where members
of the bar are not available.   28 U. S. C. § 631 (b) (1).

[11] See generally Mass Production Justice and the Constitutional
Ideal (C. Whitebread ed., 1970).

[12] States differ significantly as to whom they entrust the authority
to grant a warrant.   See *Burke* v. *Superior Court*, 3 Ariz. App. 576,
579, 416 P. 2d 997, 1000 (1966); *Parks* v. *Superior Court*, 236 P.
2d 874, 882 (Ct. App. Cal. 1951); *Kennedy* v. *Walker*, 135 Conn.
262, 272, 63 A. 2d 589, 594 (1948); *Grano* v. *State*, — Del. —,
—, 257 A. 2d 768, 773–774 (1969); *Shadwick* v. *City of Tampa*,
250 So. 2d 4 (Fla. 1971); *State* v. *Swafford*, 250 Ind. 541, 546, 237.
N. E. 2d 580, 584 (1968); *State ex rel. French* v. *Hendricks Superior
Court*, 252 Ind. 213, 247 N. E. 2d 519 (1969); *Bailey* v. *Hudspeth*,
164 Kan. 600, 606, 191 P. 2d 894, 898 (1948); *State* v. *Guidry*, 247
La. 631, 635–636, 173 So. 2d 192, 194 (1965); *Wampler* v. *Warden
of Maryland Penitentiary*, 231 Md. 639, 648, 191 A. 2d 594, 600
(1963); *LaChapelle* v. *United Shoe Machinery Corp.*, 318 Mass.
166, 168–170, 61 N. E. 2d 8, 10 (1945); *State* v. *Paulick*, 277 Minn.
140, 151 N. W. 2d 591 (1967); *People* v. *Richter*, 206 Misc. 304,
306–307, 133 N. Y. S. 2d 685, 688 (1954); *State* v. *Furmage*, 250
N. C. 616, 625–626, 109 S. E. 2d 563, 570 (1959); *Moseley* v. *Welch*,
218 S. C. 242, 250, 62 S. E. 2d 313, 317 (1950); *State* v. *Jefferson*,
79 Wash. 2d 345, 348–349, 485 P. 2d 77, 79 (1971); *State ex rel.
Sahley* v. *Thompson*, 151 W. Va. 336, 342–343, 151 S. E. 2d 870,
873 (1966); *State ex rel. White* v. *Simpson*, 28 Wis. 2d 590, 137
N. W. 2d 391 (1965); *State    Van Brocklin*, 194 Wis. 441, 217
N. W. 277 (1927).

key to national innovation and vitality.[13]  States are entitled to some flexibility and leeway in their designation of magistrates, so long as all are neutral and detached and capable of the probable-cause determination required of them.

We affirm the judgment of the Florida Supreme Court.

*Affirmed.*

---

[13] Harlan, Thoughts at a Dedication: Keeping the Judicial Function in Balance, 49 A. B. A. J. 943, 944 (1963).