951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Edward KING, Defendant-Appellant.
 No. 91-5501.
 United States Court of Appeals, Sixth Circuit.
 Dec. 27, 1991.
 
 Before RYAN and BOGGS, Circuit Judges, and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 Mark Edward King appeals the district court's refusal to suppress evidence that connected him to various drug crimes. He argues that the search that discovered the evidence was based on a warrant with such serious flaws that the evidence must be suppressed. We disagree, and affirm the lower court's decision.
 
 
 2
 * At 7:00 p.m. on Sunday, October 15, 1989, Detective Douglas Burgess, an officer with the Sheriff's Department in Putnam County, Tennessee, received a telephone call from a confidential informant. Mr. Burgess had been a police officer for ten years, and had known the informant for eight years. Mr. Burgess had relied on the informant several times in the past, and had sought between ten and fifteen search warrants based on his evidence. These warrants had led to multiple arrests and convictions. Mr. Burgess was off duty when he received the call, but met the informant within approximately fifteen minutes. The informant said that he had been in Mr. King's home within the previous twenty-four hours and had seen several ounces of cocaine there.
 
 
 3
 After this meeting, Mr. Burgess drove to the Putnam County Sheriff's Office; while driving, he radioed the dispatcher to have a judicial commissioner standing by for him. Pursuant to Tenn.Code Ann. 40-1-111, judicial commissioners in Putnam County are appointed by a majority of the 25-member county commission, and have the authority to issue search warrants. No legal training is required for the position; in fact, applicants need only have a high school diploma. At the time of the events in question, Putnam County had two judicial commissioners, one of whom was Sarina Flowers. Ms. Flowers happened to be the judicial commissioner on call to issue warrants at the time. She had received the job in May 1987, after the other commissioner encouraged her to apply for it.
 
 
 4
 The other commissioner, who had suggested that Ms. Flowers seek the job, had herself been appointed in 1985. Although she did not issue the warrant in this case, Mr. King argues that her close relationship to other county officers casts doubt on the commissioners' impartiality. She had been recommended for the job by David Andrews, a long-time friend who served both as a Putnam County Commissioner and as a deputy sheriff. At the time of the judicial commissioner's appointment, Commissioner Andrews's mother was the election commissioner in Putnam County. While the judicial commissioner was serving, she had an extra-marital affair with one of the county deputies, which continued for approximately four years. She then became involved in a second affair, apparently with the Chief Deputy of the sheriff's office. While a judicial commissioner, she also socialized with Jerry Absten, the Putnam County sheriff. She attended Christmas and campaign parties at which he was present and actively supported his efforts for reelection. She not only encouraged Ms. Flowers to apply for the office of judicial commissioner, she also spoke personally to Sheriff Absten about recommending Ms. Flowers for the job. She later told Ms. Flowers that she had spoken to the sheriff on her behalf. Shortly after becoming a judicial commissioner, Ms. Flowers began dating a deputy sheriff who worked as a corrections officer at the county jail, whom she subsequently married. Ms. Flowers also socialized occasionally with other deputies and their wives.
 
 
 5
 Because judicial commissioners do not have their own offices, Ms. Flowers met Mr. Burgess in his office roughly forty-five to sixty minutes after he had met the confidential informant. He applied for a search warrant, supporting his application with an affidavit that contained pre-printed boilerplate language and empty space for the officer to write necessary information. Part of the boilerplate language stated that the officer had received information from a "responsible and reliable citizen"; this language was included in affidavits whether or not it was true. In the affidavit, Mr. Burgess wrote that the informant had been at Mr. King's house within the last five days, even though the informant had actually stated that he had been there within twenty-four hours. This was done to protect the identity of the informant. The pre-printed language under Ms. Flowers's signature identified her as a judge, even though she was a judicial commissioner. In his testimony, Mr. Burgess explained this by stating that the form warrants generally contain both titles below the signature line, and the issuing official circles the appropriate title.
 
 
 6
 Mr. Burgess subsequently executed the search warrant and found cocaine and several firearms on the premises. On August 22, 1990, a federal grand jury indicted Mr. King on three counts: (1) possession of a firearm after previously being convicted of a felony; (2) using a firearm during and in relation to the possession of cocaine with intent to distribute; (3) possession of 500 or more grams of cocaine with intent to distribute. On November 21, 1990, Mr. King moved to suppress all evidence seized pursuant to the October 15, 1989 search warrant. After a hearing, the district court denied the motion. Mr. King pled guilty to all counts on April 12, 1991; he was sentenced to ten years on count three and to five years on counts one and two, these sentences to run concurrently with the sentence on count three. This timely appeal followed.
 
 II
 
 7
 The courts have long recognized the general principle that any search warrant must be issued by a disinterested, detached, and neutral magistrate. In Steagald v. United States, 451 U.S. 204, 212 (1981), the Supreme Court held that "the purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search." (emphasis added). In United States v. United States Dist. Court, 407 U.S. 297, 316-17 (1972), the government claimed that its warrantless surveillance of a domestic radical group conspiring to destroy government property was justified by a statute. The Court rejected this argument. Nothing that "[i]nherent in the concept of a warrant is its issuance by a 'neutral and detached magistrate,' " the Court concluded that executive branch officials do not qualify as neutral magistrates under the fourth amendment. "[U]nreviewed executive discretion may yield too readily to pressures to obtain incriminating evidence and overlook potential invasions of privacy and protected speech."
 
 
 8
 Ms. Flowers is married to a deputy sheriff who, although he works in the jail, serves as an officer for the county, as does Mr. Burgess. Mr. King argues that this constitutes an intolerably close relationship between the magistrate issuing the warrant and the officer who seeks it. Emphasizing the close personal and social connections between Ms. Flowers, the other commissioner, and members of the sheriff's office, Mr. King argues that Ms. Flowers cannot qualify as a neutral and detached magistrate. He also emphasizes her lack of knowledge concerning the law of probable cause, and asserts that she lacks the necessary competence to issue warrants.
 
 
 9
 We believe Ms. Flowers was a neutral and detached officer. After referring to the evidence discussed by Mr. King, the district court specifically stated that it was "not convinced that Ms. Flowers was somehow biased towards issuing search warrants." The court noted that as a corrections officer, "Ms. Flowers' [sic] husband never has an occasion to seek a search warrant, and does not work 'along with' detective Burgess." As for Ms. Flowers's acquaintance with the sheriff, and any influence he may have had on her getting the job, the district court found no connection between these facts and this case.
 
 
 10
 Ms. Flowers testified that her independent judgment was not compromised by the fact of her acquaintances, and that neither her husband nor [the other commissioner] ever tried to influence her to go along with a search warrant request. She further testified that she ... never felt her job or her husband's job would be in jeopardy if she denied a search warrant, which she claimed to have done in a number of instances.
 
 
 11
 After a careful review of the record, we agree with the district court that Ms. Flowers's social life did not affect her decision to issue the search warrant at issue. We further agree with the district court's conclusion that because the other commissioner did not issue the search warrant in this case, evidence about her relationships with other county officials is irrelevant.
 
 
 12
 Mr. King also calls Ms. Flowers's detachment into question by noting that the judicial commissioners had sometimes helped officers prepare their affidavits. However, as the Fifth Circuit has said, this action
 
 
 13
 does not detract from [a magistrate's] neutrality. It demonstrates it. His duty is not to "rubber stamp" conclusory allegations, but to require adequate factual details or underlying circumstances. Neither does "detached" mean that he must remain mute, and simply accept or reject an affidavit.
 
 
 14
 Albitez v. Beto, 465 F.2d 954, 956 (5th Cir.1972). Thus, we reject his argument on this issue, and hold that Ms. Flowers demonstrated sufficient detachment to issue the search warrant in question.
 
 
 15
 We also believe that Ms. Flowers was competent to determine probable cause. In Illinois v. Gates, 462 U.S. 213, 238 (1983), the Supreme Court stated that determination of probable cause is "a practical, commonsense decision," which requires no special training. Furthermore, Shadwick v. City of Tampa, 407 U.S. 345 (1972), held that municipal court clerks could constitutionally issue arrest warrants for breach of municipal ordinances. Discussing the issue of laymen's competence, the Shadwick Court stated
 
 
 16
 Our legal system has long entrusted nonlawyers to evaluate more complex and significant factual data than that in the case at hand. Grand juries daily determine probable cause prior to rendering indictments, and trial juries assess whether guilt is proved beyond a reasonable doubt.
 
 
 17
 407 U.S. at 351-52. We interpret these cases to mean that Ms. Flowers's lack of a legal education did not prevent her from issuing a valid search warrant. The Tennessee courts support this interpretation. Judicial commissioners derive their authority from Tenn.Code Ann. 40-1-111 (1990), which became law in 1978. Its constitutionality was upheld in State v. Bush, 626 S.W.2d 470 (Tenn.Crim.App.1981), in which the Tennessee Court of Criminal Appeals adopted the reasoning of Shadwick to support its conclusion.
 
 
 18
 Several recent decisions by federal courts of appeals have approved similar practices. In United States v. Mitro, 880 F.2d 1480 (1st Cir.1989), the First Circuit relied upon Shadwick to approve a state warrant issued by an assistant district court clerk. In United States v. Martinez-Zayas, 857 F.2d 122 (3d Cir.1988), the Third Circuit found that no constitutional violation occurred when a federal warrant was issued by a non-lawyer Philadelphia Municipal Court bail commissioner, even if this violated Fed.R.Crim.P. 41(a). In United States v. Comstock, 805 F.2d 1194, 1200 (5th Cir.1986), cert. denied, 481 U.S. 1022 (1987), the Fifth Circuit found no error when a state warrant was issued by a justice of the peace who was not a judge of a state court of record. The Supreme Court also seems to endorse this expansion of Shadwick. In Illinois v. Gates, 462 U.S. 213, 235 (1983), the Court noted that "search and arrest warrants have long been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of 'probable cause.' " Thus, we hold that Ms. Flowers, although a lay commissioner, had the necessary authority and competence to issue a legitimate search warrant.
 
 III
 
 19
 Mr. King claims that the affidavit in this case fails to meet the Supreme Court's test to determine whether probable cause supports the warrant. Prior to Illinois v. Gates, the Supreme Court had established a two-part test to determine probable cause. Under the "basis of knowledge" requirement, the judicial officer had to know sufficient facts to reach a judgment as to whether the informant had a basis for his claims that a certain person was involved in criminal activity, and that evidence could be found at a certain place. Under the "veracity" requirement, the judicial officer had to know sufficient facts to determine either the inherent credibility of the informant or the reliability of the informant's information on the occasion in question. See Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964).
 
 
 20
 Gates overthrew this rule, and replaced it with a "totality of the circumstances" test. The Gates Court held that
 
 
 21
 The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed."
 
 
 22
 462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).
 
 
 23
 In his appellate brief, Mr. King does not discuss this issue at length, but at trial, he named seven shortcomings of the warrant, all of which were rejected by the district court. He complained that Mr. Burgess attributed his information to a "reliable citizen," and then stated that the information came from an "informant." The district court noted that the words "reliable citizen" were part of the warrant's boilerplate language, while the word "informant" was twice handwritten by Mr. Burgess. It concluded that "the magistrate was adequately advised that an 'informant' had supplied the tip to Detective Burgess." Second, Mr. King noted that while Mr. Burgess stated that the informant's statements had led to arrests and convictions, Mr. Burgess failed to state whether the informant had supplied the information to him personally or to someone else. The district court rejected this argument, stating that "it is sufficient that the affiant knows that the informant has provided reliable information in the past, and that the affiant informs the magistrate of his knowledge." See Gates, 462 U.S. at 233.
 
 
 24
 Mr. King's next three complaints all questioned the informant's veracity. He argued that the affidavit was unclear as to whom the informant had given information in the past and whether that information led to arrests for narcotics violations. Once again, the district court held that "this degree of specificity is not required." Mr. King next protested that no information in the affidavit substantiated the informant's credibility. The district court responded that the affiant officer need merely state that the informant's tips had led to arrest and convictions in the past. Mr. King also protested that the confidential informant's unverified statement was the sole source of probable cause. The district court replied that in United States v. Seta, 669 F.2d 400, 403 (6th Cir.1982), this court stated that "personal observations of the informant [are] sufficient to demonstrate his basis of knowledge of the information."
 
 
 25
 Mr. King's sixth reason for the warrant's defectiveness was that while the informant claimed to be on the premises in question, the warrant failed to state a reason to conclude that cocaine was in the premises. However, the district court replied that " 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' " Gates, 462 U.S. at 236 (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)). Finally, Mr. King argued that affidavits must indicate "where on the premises the cocaine was observed by the informant, how much cocaine was observed, and how the cocaine was packaged," because these facts go to "whether the amount of cocaine was in excess of what a person would have for personal use." The district court concluded that this raised the question of whether the information in the affidavit had become "stale". That is, whether the magistrate had probable cause to believe that an unspecified amount of cocaine would remain on the premises for five days, or since the informant had been there, according to the affidavit. In response to that question, the court noted United States v. Gray, No. 89-1308, slip op. (6th Cir. Oct. 3, 1989) (unpublished), in which this court found that a search warrant affidavit based on statements of a named informant to the effect that he had seen cocaine at the defendant's residence within the last six days was not stale. See also United States v. Tellis, 538 F.2d 1254, 1255 (6th Cir.1976) (three days).
 
 
 26
 We agree with the district court's conclusions. Courts generally give great deference to magistrates. The Seventh Circuit recently held that
 
 
 27
 "a magistrate's determination of probable cause is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." [ United States v. Griffin, 827 F.2d 1108, 1111 (7th Cir.1987), cert. denied, 485 U.S. 909 (1988) ] (quoting United States v. Pritchard, 745 F.2d 1112, 1120 (7th Cir.1984)).
 
 
 28
 United States v. McKinney, 919 F.2d 405, 415 (7th Cir.1990). See also United States v. Alfano, 838 F.2d 158, 162 (6th Cir.), cert. denied, 488 U.S. 821 (1988) ("great deference" normally paid to the determination of the issuing judge). In United States v. Seta, 669 F.2d 400, 403 (6th Cir.1982), this court held that "the trustworthiness of an informant may be satisfied by a recital of the prior occasions on which he proved to be credible." Thus, we concluded that the informant's credibility was established by the officer's recital that the informant had " 'furnished information which has led to several arrests and convictions.' " Ibid. (quoting the affidavit). See also United States v. Dudek, 560 F.2d 1288, 1292 (6th Cir.), cert. denied, 434 U.S. 1037 (1977). In light of these cases, we are satisfied that the warrant in this case was based on probable cause.
 
 IV
 
 29
 We find no error in the district court's proceedings, and its decision is therefore AFFIRMED.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation