RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0129A (6th Cir.)
File Name: 03a0129a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*      No. 01-5593

CLARENCE PENNINGTON,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-20277—Bernice B. Donald, District Judge.

Argued: December 13, 2002

Decided and Filed: May 2, 2003

Before: KENNEDY and GILMAN, Circuit Judges;
SARGUS, District Judge.[*]

———————————

### COUNSEL

**ARGUED:** Gregory C. Krog, Jr., Memphis, Tennessee, for
Appellant. Thomas A. Colthurst, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

———————————

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge
for the Southern District of Ohio, sitting by designation.

**ON BRIEF:** Gregory C. Krog, Jr., Memphis, Tennessee, for
Appellant. Thomas A. Colthurst, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

———————————

### AMENDED OPINION

———————————

SARGUS, District Judge. Defendant-Appellant, Clarence
Pennington ("Pennington"), pleaded guilty to possession with
intent to distribute 79.2 grams of crack cocaine, in violation
of 21 U.S.C. § 841. Pennington reserved his right to appeal
the order of the district court denying his motion to suppress
the evidence obtained following the issuance and execution
of a state search warrant. After a hearing, the Magistrate
Judge issued a Report and Recommendation proposing that
the motion be denied. Subsequently, the district court denied
the motion to suppress.

Pennington raises three issues on appeal. First, he contends
that the district court erred in finding that the search warrant
was issued by a neutral and detached magistrate. Second, he
asserts that the good faith exception in *United States v. Leon*,
468 U.S. 897 (1984), does not apply in the context of the
search warrant issued in this case. Finally, Pennington claims
that the executing officers violated his Fourth Amendment
rights by forcing entry into his home after knocking, without
waiting a reasonable period for him to respond.

### I.

It is well established that this Court reviews the district
court's findings of fact in a suppression hearing under the
clearly erroneous standard, while the district court's
conclusions of law are reviewed *de novo*. *United States v.
Avery*, 137 F. 3d 343, 348 (6th Cir. 1997).

## A.  The Issuer of the Search Warrant

The warrant at issue in this case was issued under state law by a Shelby County Judicial Commissioner. Essentially, Pennington contends that Shelby County Judicial Commissioners are not neutral and detached in that they are appointed by a local legislative authority, the Shelby County Commission. Under Tennessee law, the legislative body of a county having a population in excess of 700,000 may appoint one or more judicial commissioners who are authorized to issue search warrants upon a finding of probable cause. Tenn. Code Ann. § 40-1-111(a)(1)(A) (Supp. 2002). The same statute provides that the term of office of such judicial commissioners shall be established by the legislative body, with the proviso that such term may not exceed four years. § 40-1-111(a)(1)(B). The statute further provides that the judicial commissioner shall receive compensation determined by the same legislative body. § 40-1-111(a)(2).

Appellant contends that these provisions of Tennessee law impermissibly place a legislative body, the Shelby County Commission, in ultimate control of the judicial commissioners. Appellant also asserts that such arrangement violates Art. II, Sec. 1 of the Constitution of Tennessee, which separates governmental powers into the familiar three-part alignment of executive, legislative, and judicial authority.

The Magistrate Judge, as well as the District Judge, relied upon *United States v. Leon*, *supra*, to hold that the officers relied in good faith on the warrant issued by the judicial commissioner. The Report and Recommendation was issued by the Magistrate Judge on August 28, 2000, prior to this Court's decision in *United States v. Scott*, 260 F.3d 512 (6th Cir. 2001).

In *United States v. Scott*, this Court decided that the *Leon* exception to the exclusionary rule is not applicable if the judicial officer issuing a search warrant is wholly without legal authority. *Id.* at 515. In *Scott*, the judge who issued the search warrant had retired and had no state-law authority to issue a search warrant. Under these circumstances, law

enforcement officers could not rely upon the *Leon* exception. *Id.*

Pennington essentially contends that a judicial commissioner appointed by a legislative body of a county who is not a judge or even an attorney may not lawfully issue a search warrant or act as a neutral magistrate for purposes of the Fourth Amendment. The caselaw clearly rejects this position.

In *Shadwick v. City of Tampa*, 407 U.S. 345, 347 (1972), a defendant challenged the issuance of an arrest warrant by a clerk of the Tampa, Florida Municipal Court. The clerk had no law degree or special legal training. Florida law permitted a clerk assigned to the municipal court to review affidavits presented and to determine whether an arrest warrant should issue. Shadwick contended that warrants could only be issued by judicial officers, rather than executive officials not possessed of legal training.

A unanimous Supreme Court held:

The substance of the Constitution's warrant requirements does not turn on the labeling of the issuing party. The warrant traditionally has represented an independent assurance that a search and arrest will not proceed without probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime. Thus, an issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search. This Court long has insisted that inferences of probable cause be drawn by "a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

The requisite detachment is present in the case at hand. Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement. There has been no

showing whatever here of partiality, or affiliation of these clerks with prosecutors or police. The record shows no connection with any law enforcement activity or authority which would distort the independent judgment the Fourth Amendment requires. . . . While a statutorily specified term of office and appointment by someone other than "an executive authority" might be desirable, the absence of such features is hardly disqualifying. Judges themselves take office under differing circumstances. Some are appointed, but many are elected by legislative bodies or by the people. Many enjoy but limited terms and are subject to re-appointment or re-election. Most depend for their salary level upon the legislative branch. We will not elevate requirements for the independence of a municipal clerk to a level higher than that prevailing with respect to many judges.

*Id.* at 350-51 (internal citations omitted).

A somewhat similar challenge to the authority of a judicial commissioner under Tennessee law was addressed by this Court in *United States v. King*, 951 F.3d 350 (6th Cir. 1991) (unpublished table decision) (No. 91-5501 available at 1991 WL 278983). In *King*, the judicial commissioner was married to a law enforcement officer of the county. She had no legal education regarding the issuance of search warrants. This Court held that her lack of education did not prevent her from issuing valid search warrants. Further, notwithstanding her connection to a law enforcement officer, this Court found that the search warrant she issued satisfied the requirement of the Fourth Amendment.

Appellant in the case at bar supports his position with the testimony of Officer Black, who stated that the judicial commissioner in this case had never rejected a warrant sought. The record, however, is devoid of any estimate of how many search warrants Officer Black had requested. Further, in the absence of any other evidence on the issue, it is just as logical to conclude that Officer Black presented affidavits in support of search warrants which justified the

issuance of such requested process. The record is insufficient to draw any conclusions as to the lack of neutrality of the judicial commissioner who issued the search warrant in this case.

Finally, a number of other courts have found that no constitutional violation occurs when a search warrant is issued by a non-lawyer. *United States v. Mitro,* 880 F.2d 1480, 1485-86 (1st Cir. 1989); *United States v. Comstock,* 805 F.2d 1194, 1200 (5th Cir. 1986), *cert. denied*, 481 U.S. 1022 (1987).[1]

Pennington's constitutional challenge to the authority of a Shelby County Judicial Commissioner to issue a valid search warrant is without merit.

## B.   Knock and Announce Rule

The Appellant next challenges the search itself, contending that the officers violated the knock and announce rule as articulated under Fourth Amendment jurisprudence. Pennington contends that the district court erred in finding that the officers knocked and waited a sufficient period of time under the circumstances before forcibly entering his dwelling.

The Magistrate Judge made the following factual findings, which were adopted by the district court: At approximately 3:45 p.m. on November 30, 1999, six to seven Memphis police officers came to Pennington's residence to execute the search warrant. All of the officers were wearing shirts marked "Police." A chainlink fence surrounded the house.

---

[1] With regard to a search warrant issued under federal law, Fed. R. Crim. P. 41(a) limits the authority to issue search warrants to a Federal Judge or Magistrate Judge or a state judge sitting on a court of record. Thus, the warrant issued in this case could not have been issued under federal law. Fed. R. Crim. P. 41(a) does not apply to state warrants, even if the evidence or contraband recovered is used in a federal criminal prosecution. *United States v. Heacock*, 31 F.3d 249, 258 (5th Cir. 1994).

Beyond these facts, the record contains a sharp divergence in testimony.

Four officers testified concerning the timing of the entry into Pennington's home. Detective Wright testified that he was the first officer to reach the front door. As he banged on the door, he yelled in a loud voice "Memphis Police Department. Search Warrant." Wright also testified that he then heard footsteps that sounded as if someone was running away from the door. Wright estimated that approximately eight to ten seconds passed after he announced his presence, at which point he used a pry bar device to force open the front door.

Officer Tilton also testified that he heard Wright knock on the door and announce "Police." Tilton estimated approximately ten seconds elapsed between the knock and the prying open of the door. Detective Black further corroborated Detective Wright and Officer Tilton and estimated that approximately eight seconds elapsed between the announcement and the breaking of the door. Finally, Lieutenant Berryhill testified that he heard Detective Wright announce the police presence. He estimated that between eight and fifteen seconds elapsed between the announcement and the forced entry.

Three defense witnesses testified at the hearing. All three stated that they did not hear a knock on the door and did not hear the police announce their presence before the door was forced open. All three witnesses instead testified that the first time the police announced their presence occurred after the forced entry of the dwelling.

The Magistrate Judge focused on factual inconsistencies involved in the testimony of two of the three defense witnesses. William Jennings, for example, testified that he was seated on the front porch of a friend's house across the street from Pennington's residence. A second defense witness testified, however, that he and Jennings were occupying a car on the street at the time the officers pulled up to the Pennington residence. In addition, all three defense witnesses

testified that they did not discuss their observations of the events in question with any other person between the time of the events and their testimony before the Magistrate Judge, which the Magistrate Judge found unbelievable.

The Magistrate Judge, whose findings were adopted by the District Court, resolved the disputed testimony by concluding that the officers' testimony was more credible in light of all the circumstances. Accordingly, the District Court concluded that between eight to ten seconds elapsed between the knocking on the door and the forced entry into Pennington's dwelling. This factual finding is not clearly erroneous and therefore is accepted by this Court.

The legal issue presented by Pennington is whether the officers violated the knock and announce principles set forth in *Wilson v. Arkansas*, 514 U.S. 927 (1995). In *Wilson*, a unanimous Supreme Court held that the Fourth Amendment prohibition on unreasonable searches and seizures includes the general rule that an officer's unannounced entry into a home, absent special circumstances, is unconstitutional. *Id.* at 930. A unanimous Court declared:

> Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. Contrary to the decision below, we hold that in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment.
>
> This is not to say, of course, that every entry must be preceded by an announcement. The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcements that ignores countervailing law enforcement interests.

*Id.* at 934.

In *United States v. Spikes*, 158 F.3d 913, 926 (6th Cir. 1998), this Court refused to adopt a rigid rule based upon number of seconds between the time the police announce their presence by seeking entrance into a home and the point at which the home is forcibly entered. This Court held:

> Nonetheless, we decline their invitation to create a bright-line rule for every case, *i.e.*, that waiting less than five seconds is *per se* unreasonable while waiting more than five seconds is *per se* reasonable under the Fourth Amendment.
>
> The Fourth Amendment's "knock and announce" principle, given its fact-sensitive nature, cannot be distilled into a constitutional stop-watch where a fraction of a second assumes controlling significance.

*Id.* at 926.**2**

In *Spikes*, the Court considered a number of factors in determining whether the forcible entry made 15 to 30 seconds after the police knocked and announced their presence was reasonable under the Fourth Amendment. The Court first noted that the officers were authorized to search for drugs and that they could assume that persons inside the residence might destroy the evidence "before it could be seized." *Id.* Second, prior to executing the warrant, the officers reasonably believed that potential drug traffickers at the residence might have lookouts and be armed. *Id.* Risks to the officers would

---

**2**The search warrant at issue in this case was issued and executed under state law. A search warrant executed under federal law must also meet the conditions set forth in 18 U.S.C. § 3109. Under the statute, before an officer may forcibly enter a house to execute a search warrant, the officer must be "refused admittance" or the officer must be in the process of liberating himself or a person aiding in the execution of the warrant. The Fourth Amendment standard articulated in *Wilson* is somewhat similar to that set forth in § 3109 in that under the statute, after law enforcement announce their presence and intention to search the home, a delay of a certain period of time in effect constitutes a "refused admittance." *See United States v. Rameriz*, 523 U.S. 65, 69 (1998).

increase the longer they delayed entry into the home. Third, the officers executed the warrant during the middle of the morning, a time people are typically awake and involved in everyday activities. *Id.* at 927. Consequently, less time is needed to respond to a knock on the door. Finally, the Court noted that the officers used a bullhorn to advise those inside the residence of their presence. *Id.* The bullhorn was loud enough to alert many people in the neighborhood that a search was underway and many neighbors came out of their homes to observe what was happening. Based upon these factors, the Court concluded that the officers did not violate the knock and announce rule by waiting 15 to 30 seconds before entering the residence. *Id.*

More recently, in *United States v. Pinson*, – F.3d – , 2003 WL 541404 (6th Cir. Feb. 27, 2003), this Court considered whether police lawfully made a forcible entry into a dwelling to execute a search warrant. The officers announced their presence, waited five to ten seconds, and then forced their way into the residence. Citing *Spikes*, the Court found that the number of seconds, standing alone, was not determinative of the issue. *Id.* at *6. Instead, the Court found it significant that "the officers' overall actions be reasonable, not that they wait a prescribed length of time before forcible entry." *Id.* (citing *Spikes,* 158 F.3d at 925-26).

In this case, the officers were also searching for drugs. The record does not contain evidence that the owner of the home or occupants thereof were armed. But the warrant was executed at 3:45 in the afternoon which, as in *Spikes* and *Pinson*, was a time that people were presumably awake and engaged in everyday activities. As observed in *Spikes,* "the amount of time officers need to wait before entering a home necessarily depends on how much time it would take for a person in the house to open the door. When the police execute a warrant in the dead of night . . . the length of time the officers should wait increases." *Spikes*, 158 F.3d at 927.

One additional factor present in this case is the testimony of Detective Wright that he heard the sound of footsteps, indicating someone was running away from the front door. Such fact would indicate to a reasonable police officer that the request for entry was being effectively denied, that the person inside the home was taking some type of evasive action, including the possible destruction of contraband, and that the person inside the home was aware that police were seeking entry to his home.

Under the analysis in *Spikes* and *Pinson*, and given the testimony of Detective Wright, eight to ten seconds was a reasonable period of time for the officers to wait before forcing entry into the home. Our conclusion is bolstered by the fact that, unlike the circumstances in *Spikes* and *Pinson,* the officer who knocked on the door testified that he heard a person running away from the door after he knocked and announced the presence of the police. Under such circumstances, an eight-to-ten second wait by the police is objectively reasonable under the Fourth Amendment to justify a forced entry into the residence based upon a search warrant.[3] Other courts, including other panels of this Court, have found similar periods of time sufficient to justify the entry into the home without the owner's permission. *United States v. Johnson*, 215 F.3d 1328 (unpublished table decision) (No. 98-3183, available at 2000 WL 712385) (5 seconds);

---

[3]In his Petition for Rehearing, Pennington argues that the original opinion in this case is irreconcilable with the decision in *United States v. Dice*, 200 F.3d 978, 982 (6th Cir. 2000). In *Dice*, however, the government conceded that the time between the knock and the entry was unreasonable under the Fourth Amendment. *Id.* at 982. The unrefuted testimony in *Dice* demonstrated that after the police presence was announced, the officers heard only "movement in the house" and waited only a "few" seconds. *Id.* at 981. In this case, officers announced their presence, heard a person run *away* from the door, and entered the residence eight to ten seconds later. In *Dice*, movement in the house could have indicated that an occupant was coming to open the door. Here, the unrefuted testimony revealed that the occupant was moving away from the door, which is evidence that admission to the premises was not forthcoming.

*United States v. Jones,* 208 F.3d 603, 610 (7th Cir. 2000) (5 to 13 seconds); *United States v. Gatewood,* 60 F. 3d 248, 250 (6th Cir. 1996) (10 seconds); *United States v. Garcia*, 983 F.2d 1160, 1168 (1st Cir. 1993) (10 to 15 seconds); *United States v. Knapp*, 1 F.3d 1026, 1031 (10th Cir. 1993) (10 to 12 seconds.[4]

## II.

Based upon the foregoing, the decision of the district court is **AFFIRMED** in all respects.

---

[4]The Ninth Circuit alone has focused solely on the number of seconds between the knock and the forced entry. In *United States v. Banks*, 282 F.3d 699, 704 (9th Cir. 2002), *cert. granted*, --- S. Ct. ---, 2003 WL 396695 (U.S. Feb. 24, 2003), the Court held that officers acting without exigent circumstances to execute a search warrant in pursuit of drugs violated the Fourth Amendment by waiting only fifteen to twenty seconds after announcing their presence. The holding in *Banks* is inconsistent with this Court's precedent in *Spikes* and *Pinson.*