RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0197P (6th Cir.)
File Name: 04a0197p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

―――――――――――――

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

*v.*

No. 03-5303

DAVID JEREMY PARKER;
BARBARA JEAN SUTTON; and
PETER JANSEN SUTTON,
*Defendants-Appellees.*

―――――――――――――

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 02-00028—Joseph H. McKinley, Jr., District Judge.

Argued: April 22, 2004

Decided and Filed: June 28, 2004

Before: MERRITT and MOORE, Circuit Judges;
DUGGAN, District Judge.[*]

―――――――――――――

[*] The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

2    *United States v. Parker, et al.*    No. 03-5303

―――――――――――――

### COUNSEL

**ARGUED:** Jo E. Lawless, UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellant. Gregory W. Butrum, GREGORY WARD BUTRUM, PLLC, Louisville, Kentucky, for Appellees. **ON BRIEF:** Jo E. Lawless, Terry M. Cushing, UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellant. Gregory W. Butrum, GREGORY WARD BUTRUM, PLLC, Louisville, Kentucky, for Appellees.

―――――――――――――

### OPINION

―――――――――――――

PATRICK J. DUGGAN, District Judge. In this interlocutory appeal, the government challenges the district court's decision to suppress evidence seized at the residence of Barbara Jean Sutton and Peter Jansen Sutton (collectively the "Suttons") pursuant to two search warrants. The district court concluded that the trial commissioner who issued the search warrants was not neutral and detached because she also served as an administrative assistant at the county jail. The court therefore held that the search warrants were invalid. The district court additionally ruled that the exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984), is inapplicable under these circumstances. The government filed this appeal, challenging the district court's decision. For the reasons that follow, we affirm.

### I.    Standard of Review

This court reviews the district court's findings of fact in a suppression hearing under the clearly erroneous standard, while the district court's conclusions of law are reviewed *de*

*novo*. *United States v. Pennington*, 328 F.3d 215, 216-17 (6th Cir. 2003)(citing *United States v. Avery*, 137 F.3d 343, 348 (6th Cir. 1997).

## II.   Factual Background

On July 21 and 24, 2001, law enforcement officers in Ohio County, Kentucky, seized seventy-one firearms, marijuana, cocaine, methamphetamine, drug paraphernalia, explosive materials, and allegedly stolen personal property pursuant to two search warrants executed for the Suttons' residence. Ohio County Trial Commissioner Michelle Madison ("Madison") signed both warrants.[1]  Judge Renona C. Browning ("Judge Browning"), District Judge for Kentucky's 38th Judicial District, swore in Madison as a trial commissioner for Ohio County several weeks earlier, on July 2, 2001.[2]  Madison was married to Judge Browning's brother, who died on September 2, 2000.

On June 25, 2001, Judge Browning had written Kentucky Supreme Court Chief Justice Joseph E. Lambert, requesting the appointment of a temporary trial commissioner for Ohio County based on a district judge vacancy. In her letter, Judge Browning advised Chief Justice Lambert that she had been unable to find an attorney in the county interested in this responsibility but that Madison agreed to take the position if it became available. Judge Browning informed Chief Justice Lambert that Madison was an employee of the Ohio County Detention Center and that her "duties at the jail are bookkeeping, finance officer, purchasing agent and general lieutenant." On June 29, 2001, Chief Justice Lambert signed an order approving the appointment of a temporary trial

---

[1] The only district judge for Ohio County was not in the district when the warrants were signed.

[2] The 38th Judicial District covers Butler, Edmonson, Hancock, and Ohio counties in Kentucky.

commissioner for Ohio County pursuant to Kentucky Supreme Court Rule 5.010 and Section 113(5) of the Kentucky Constitution; although he did not specifically approve the appointment of Madison.

Although there was some indication in the record that Madison's title at the detention center was "Chief Lieutenant Deputy Jailer," the district court concluded that her duties were similar to those of an administrative assistant. The court further found that Madison served at the pleasure of a law enforcement agent, as the Ohio County Jailer hired and could fire her.  The court determined that Madison's job responsibilities included the following: handling the purchase orders for all jail bills; assisting the jailer with the yearly budget; keeping track of expenditures for the jail; billing surrounding counties for housing their inmates; maintaining the records of the jail's commissary account; handling the jailer's correspondence; and purchasing jail supplies. Madison additionally handled inmates' work release requests by obtaining information from the prisoners and completing work release forms.  She assisted inmates with their child support obligations, helped inmates obtain legal representation, and facilitated inmates' drug rehabilitation placements.  Unlike the county's deputy jailers, Madison did not carry a weapon; nor did she wear a badge or uniform. She never arrested anyone, did not participate in the ongoing training required of deputy jailers, and was not on the regular rotation of duties for monitoring prisoners.

Based on the evidence seized at the Suttons' residence, a federal grand jury returned a five-count indictment against the Defendants on September 4, 2002.

## III.   Applicable Law and Analysis

It is a long established requirement that, to be valid under the Fourth Amendment, a search warrant must be issued by a neutral and detached magistrate. *Shadwick v. City of Tampa*, 407 U.S. 345, 350, 92 S. Ct. 2119, 2123 (1972)(citing

*Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367, 369 (1948)). The issue before the Supreme Court in *Shadwick* was whether municipal court clerks qualified as neutral and detached magistrates. Concluding that the clerks satisfied this requirement, the Court stated:

> Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement. There has been no showing whatever here of partiality, or affiliation of these clerks with prosecutors or police. The record shows no connection with any law enforcement activity or authority which would distort the independent judgment the Fourth Amendment requires . . . The municipal clerk is assigned not to the police or prosecutor but to the municipal court judge for whom he does much of his work. In this sense, he may well be termed a 'judicial officer.'

*Id*. at 350-51, 92 S. Ct. at 2123.

Following *Shadwick*, several courts have upheld search warrants issued by individuals connected to the judiciary. *See, e.g., United States v. Mitro*, 880 F.2d 1480 (1st Cir. 1989)(approving state warrant issued by assistant district court clerk); *United States v. Martinez-Zayas*, 857 F.2d 122 (3d Cir. 1988)(upholding warrant issued by municipal court bail commissioner); *United States v. Comstock*, 805 F.2d 1194 (5th Cir. 1986)(upholding warrant issued by justice of the peace). Similarly, this court upheld a search warrant issued by a judicial commissioner in Shelby County, Tennessee, despite the defendant's claim that the county's judicial commissioners could not be considered neutral and detached because they were appointed by a local legislative authority which also set the terms of their office and compensation. *United States v. Pennington*, 328 F.3d 215 (6th Cir. 2003). Quoting from *Shadwick*, the *Pennington* court reasoned that the commissioners' connection to the

legislature, alone, did not violate the Fourth Amendment's neutral and detached requirement:

> " . . . While a statutorily specified term of office and appointment by someone other than 'an executive authority' might be desirable, the absence of such features is hardly disqualifying. Judges themselves take office under differing circumstances. Some are appointed, but many are elected by legislative bodies or by the people. Many enjoy but limited terms and are subject to re-appointment or re-election. Most depend for their salary level upon the legislative branch. We will not elevate requirements for the independence of a municipal clerk to a level higher than that prevailing with respect to many judges."

*Id.* at 218 (quoting *Shadwick*, 407 U.S. at 351, 92 S. Ct. at 2123). As the *Shadwick* Court stated further, "The clerk's neutrality has not been impeached: he is removed from prosecutor or police and works within the judicial branch subject to the supervision of the municipal court judge." *Shadwick*, 407 U.S. at 351, 92 S. Ct. at 2123.

The government relies on *Pennington*, as well as this court's unpublished opinion in *United States v. King*, 1991 WL 278983 (6th Cir. December 27, 1991), to argue that Madison's position at the county jail did not, by itself, contravene her neutrality and detachment as a trial commissioner. In *King*, the defendant moved to suppress evidence seized from his home pursuant to a search warrant, claiming that the warrant was invalid because the issuing judicial commissioner was married to a deputy sheriff who worked as a corrections officer at the county jail and because the couple occasionally socialized with other deputies and

their spouses.[3]  *Id.*, 1991 WL 278983, *1.  We upheld the warrant, concluding that the judicial commissioner's social life was insufficient to demonstrate an engagement with law enforcement that would render her lacking in neutrality and detachment.

In this case, the district court concluded that Madison was engaged in law enforcement.  This court agrees and therefore finds *King* and *Pennington* distinguishable.  Unlike the judicial commissioner in *King*, Madison's connection to law enforcement was not limited to her social interactions or relationships with law enforcement officials.  Unlike the judicial commissioner in *Pennington*, Madison's connection to the executive branch extended beyond her appointment by an executive official.

The district court found that Madison was employed by and worked for a law enforcement agency. Not only was she hired by the Jailer, a law enforcement official, but the Jailer served as her immediate and only supervisor.  While Madison's daily duties may have been different than those of a deputy jailer, her work was performed at and for the Ohio County jail.  Furthermore, Madison interacted with and assisted prisoners.

It also appears that Madison has an interest in the outcome of proceedings before her because of her work as the "chief lieutenant deputy jailor" for financial matters, including the collection of fees and billings for housing inmates and for trying to secure the financial stability of the jail. In *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437 (1927), and *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S. Ct. 80 (1972), the mayors of towns in Ohio had a financial interest in the

---

[3]In support of his claim that the warrant was invalid, the defendant in *King* also offered evidence to establish a close relationship between the county's other judicial commissioner and law enforcement officials.  As that judicial commissioner did not execute the search warrant, however, this court concluded that evidence regarding her relationships with other county officials was irrelevant.  *King*, 1991 WL 278983, *3.

outcome of minor cases that they had jurisdiction under Ohio law to try.  The mayors had a financial interest in the sense that they could assess fees and costs which in the case of *Tumey* went into his own pocket and in the case of *Ward* went to the city of which he was mayor.  In the case before us, Madison oversees the jail's budget and is in charge of its financial transactions.  Madison's agency stands to gain financially in the form of bookings, administrative fees from arrests and per diem lodging.  *See* KY. REV. STAT. § 441.265.  Madison explained that for arrestees for which she would issue an arrest warrant in her county as trial commissioner, as jailor she would collect various fees for the jail: "[i]f someone comes in and they make bond and they're being released, they can pay the booking fee; the deputies can write them a receipt and accept that money and put it into our safe." (J.A. at 238.)  Like *Tumey* and *Ward*, Madison may have a financial interest in the outcome of cases before her because she can issue warrants for the arrest of persons who would then pay fees to Madison as the jail's financial officer and whose lodging may be reimbursed by other government agencies. This set of incentives reinforces our conclusion that Madison's ability to act as a neutral and objective magistrate is questionable.

Based on these factual findings, which this court finds the record supports, we conclude that Madison was not sufficiently disengaged from activities of law enforcement to satisfy the Fourth Amendment's neutral and detached requirement.

In *Leon*, the Supreme Court carved out a good-faith exception to the exclusionary rule when officers act in reasonable reliance on a search warrant issued by a neutral and detached magistrate that is subsequently found to be invalid.  *Leon*, 468 U.S. 897, 104 S. Ct. 3405.  However as a matter of first impression among the Circuit Courts, this court held in 2001 that *Leon* is inapplicable when a warrant is signed by an individual lacking the legal authority necessary to issue warrants. *United States v. Scott*, 260 F.3d 512 (6th

Cir. 2001). The court reasoned that the Supreme Court, in carving out a good-faith exception in *Leon*, "presupposed that the warrant was issued by a magistrate or judge clothed in the proper legal authority." *Id*. at 515. The *Scott* court held that a search warrant issued by an individual who is not neutral and detached is void *ab initio*. *Id*. at 515. As Madison's appointment as a trial commissioner was unlawful due to her engagement with law enforcement activities, *Scott* controls this case. Thus this court concludes that the district court properly declined to apply *Leon*'s good-faith exception in this case.

The Government's reliance on *United States v. Malveaux*, 350 F.3d 555 (6th Cir. 2003), is misplaced. *Malveaux* did not modify or reverse *Scott*. In *Malveaux*, the defendant challenged a search warrant signed by a Judicial Commissioner appointed for Hamilton County, Tennessee, contending that the commissioner was not authorized to issue warrants because the provision of Tennessee law authorizing his appointment conflicted with another section of the Tennessee Code. *Id*. at 557. *Malveaux* therefore did not address *Leon*'s application when a judicial officer lacking neutrality or detachment issues a warrant. As the *Malveaux* court stated in distinguishing the case before it from *Scott*, the Judicial Commissioner was legally authorized to issue warrants. The courts or legislature subsequently might find the law authorizing the Judicial Commissioner's appointment inconsistent with other state law provisions; however until that time, the Commissioner possessed the legal authority to issue warrants. In comparison, it is a violation of the Fourth Amendment to authorize individuals insufficiently detached from law enforcement to issue warrants. In other words, such individuals never could be *legally* authorized to issue warrants. Therefore, because Madison was not a neutral and detached magistrate, the search warrants she signed were void from the beginning.

Accordingly, the district court's decision is AFFIRMED.