# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2165

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Nebraska. |
| Tylan Lucas, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 14, 2005
Filed: June 16, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

BEAM, Circuit Judge.

Tylan Lucas was tried before a jury and convicted on five counts: possession with intent to distribute five grams or more of a mixture or substance containing cocaine base; possession of a firearm in furtherance of a drug trafficking crime; possession of a firearm after a felony conviction; conspiracy to distribute or possess with intent to distribute fifty to one-hundred-fifty grams of a mixture or substance containing cocaine base; and obstructing, influencing, or impeding or attempting to obstruct, influence, or impede an official proceeding. He was found not guilty on two other counts.

Lucas appeals his conviction on eight separate grounds. Finding that a "Warrant of Arrest," signed by the Nebraska Director of Correctional Services (Corrections Director), is not a valid arrest warrant, we reverse and remand.[1]

## I.    BACKGROUND

On October 22, 2003, then Corrections Director Harold Clarke issued a document titled "Warrant of Arrest (for Escaped Prisoner)" for Tylan Lucas, after his escape from the custody of the Department of Correctional Services. On January 4, 2004, Sergeant Timothy J. Carmody, a member of the Omaha Police Department fugitive task force, received a telephone call from Crime Stoppers indicating that a caller had information about Tylan Lucas. Carmody put Deputy Gerald Kellogg of the Douglas County Sheriff's Department in contact with the caller. Kellogg met with the caller, and the pair drove past a residence, which the caller reported was Lucas' location.

Carmody, Kellogg, and members of the fugitive task force then went to the residence, and knocked on the front door. Theresa Scaife, whom they believed to be the tenant, answered the door and told the officers that she had to get dressed. She returned to the door after a couple of minutes. Scaife initially denied that Lucas was present and asked the officers if they had a search warrant. The officers told her that because of the arrest warrant, they would search the residence. Scaife then admitted that Lucas was inside the residence. Scaife was handcuffed and placed in a police cruiser.

---

[1]We are presented with a situation in which the police used an invalid arrest warrant to make an arrest in a private residence. Had Lucas been arrested in a public place, the validity of the warrant may not have been at issue. See United States v. Watson, 423 U.S. 411, 423-24 (1976) (holding that a public arrest, based on probable cause that a felony had been committed, did not require a warrant).

Officers announced their presence and directed Lucas to come out of the house. When he did not, officers entered and found Lucas in the basement, wearing only boxer shorts. Because the weather was bitterly cold, the officers determined that it was necessary to dress Lucas. Kellogg located a pair of pants, which Lucas admitted were his, but asked to wear a different pair. Kellogg had already begun searching the first pair of pants and found $2900, two bags of crack cocaine, and one bag of marijuana. Lucas was then dressed and placed in a police cruiser.

Scaife was returned to the residence, and her handcuffs removed. At that point, officers explained the situation to her and told her that they believed Lucas had contraband in the residence, including a weapon. Scaife verbally consented to a search and signed a consent form. Officers then located a large amount of marijuana and a stolen six-shot revolver.

Prior to trial, Lucas moved to suppress the evidence. The district court denied the motion, finding that Scaife did not consent to the search, but rather acquiesced to the execution of an arrest warrant. The district court determined that Clarke was neutral and detached and had authority to sign an arrest warrant. The district court also found that the officers properly executed the warrant. Lucas appeals the validity of the warrant, and we remand.

## II.    DISCUSSION

Lucas argues that the search was an invalid, nonconsensual search of a residence. He contends that the warrant was invalid because its issuer was a member of the executive branch, rather than a detached and neutral magistrate. The United States counters that Clarke had the authority to sign the warrant and was capable of determining whether probable cause existed for the requested arrest or search. In the alternative, the United States argues the good-faith exception applies.

## A. The Arrest Warrant

As the district court correctly determined, the Corrections Director has statutory authority to "[i]ssue or authorize the issuance of a warrant for the arrest of any person committed to the department who has escaped from the custody of the department." Neb. Rev. Stat. § 83-173(11). However, a statutory grant of authority is not dispositive, as we must determine whether that grant conforms to the Fourth Amendment.

In <u>Payton v. New York</u>, the Supreme Court determined that the Fourth Amendment, applied to the states through the Fourteenth Amendment, "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." 445 U.S. 573, 576 (1980). A defendant who has been illegally arrested does not get a free pass; he must still stand trial. <u>Id.</u> at 592, n.34. However, evidence found during an unlawful arrest might be subject to the exclusionary rule and might not be admissible at trial. <u>Id.</u> at 591-92. Lucas argues that the arrest warrant was invalid, that the arrest in a private residence was unlawful, and that the evidence found during the arrest was not admissible. Thus, we must determine whether the warrant for Lucas' arrest was valid.

A warrant may be issued only by an official who is "neutral and detached" and "capable of determining whether probable cause exists for the requested arrest or search." <u>Shadwick v. City of Tampa</u>, 407 U.S. 345, 350 (1972). Lucas does not dispute the ability of Clarke to determine probable cause, only whether he is neutral and detached.

The Supreme Court has examined the roles of government officials who have issued warrants to determine whether the warrants were valid. At one end of the

spectrum, a state attorney general, who was in charge of a criminal investigation and served as chief trial prosecutor, could not issue a valid warrant because he was not neutral and detached. Coolidge v. New Hampshire, 403 U.S. 443, 449-50 (1971), overruled in part on other grounds by Horton v. California, 496 U.S. 128 (1990). At the other end of the spectrum, city court clerks, who had "no connection with any law enforcement activity or authority," and were assigned to and supervised by municipal court judges, were sufficiently neutral and detached to issue arrest warrants, despite having been appointed by the city clerk. Shadwick, 407 U.S. at 350-51. We note that the official issuing the warrant need not actually be a judge or attorney. Id. at 352. Though in Shadwick the Court expressly did not "determine whether a State may lodge warrant authority in someone entirely outside the sphere of the judicial branch.," id., the Court has warned against vesting the power to issue warrants in members of the federal executive branch, whose job is to enforce laws, investigate, and prosecute. United States v. U.S. Dist. Court, 407 U.S. 297, 317 (1972).

This court has examined the need for a neutral and detached magistrate in contexts involving United States Magistrate Judges. See, e.g., United States v. Mathison, 157 F.3d 541, 548 (8th Cir. 1998) (holding defendant failed to show magistrate judge was not impartial). We have also concluded that a local municipal judge (also known as a "police magistrate") had the authority to issue a search warrant under North Dakota law. Gallagher v. United States, 406 F.2d 102, 104, 108 (8th Cir. 1969). However, Gallagher was decided prior to Shadwick and thus did not discuss whether the official was neutral and detached.

The Sixth Circuit invalidated two search warrants signed by a trial commissioner who was also an employee at the Ohio County Detention Center. United States v. Parker, 373 F.3d 770, 771-72, 774 (6th Cir. 2004). The commissioner had been hired by, was supervised by, and could be fired by the jailer, and she was responsible for securing the financial stability of the jail. Id. at 773. The

commissioner "was not sufficiently disengaged from activities of law enforcement," and therefore could not serve as a neutral and detached magistrate. Id. at 774.

Based on the persuasive reasoning of our sister circuit, we find that the Corrections Director, a member of the executive branch, is not sufficiently neutral and detached to serve as a magistrate. Though confirmed by the legislature, the Governor of Nebraska appoints the Corrections Director, establishes his salary and may determine that his services are no longer needed. Neb. Rev. Stat. §§ 81-102, 81-103, and 81-107. The Corrections Director supervises and is responsible for the administration of the Department of Corrections, appoints the chief executive officer of each facility, and provides training programs for department employees. Neb. Rev. Stat. § 83-173. Because the Corrections Director is a member of the executive branch and accountable directly to the Governor, he is not a neutral and detached magistrate for purposes of issuing arrest warrants. Therefore, the "Warrant of Arrest" signed by the Corrections Director was not a valid arrest warrant.

**B.     Good-Faith Exception**

In the alternative, the United States argues that the good-faith exception to the warrant requirement should apply. The good-faith exception allows evidence "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate" to be admitted, even if the warrant is later found to be defective. United States v. Leon, 468 U.S. 897, 913 (1984). The good-faith exception was fashioned because the exclusionary rule is designed to deter only law enforcement officers, not magistrates and judges. Id. at 918. However, the good-faith exception does not apply when the individual who issued the warrant is not neutral and detached. Id. at 914. Because the Corrections Director is not a neutral and detached magistrate, the good-faith exception necessarily cannot apply.

-6-

## III. CONCLUSION

The Director of the Nebraska Department of Corrections, is not a neutral and detached magistrate. The "Warrant of Arrest" is not a valid arrest warrant and the good-faith exception to the warrant requirement does not apply. Accordingly, we reverse and remand to the district court for proceedings consistent with this opinion.

_____