The STATE of Ohio, Appellant,

v.

WAIBEL, Appellee.

[Cite as *State v. Waibel* (1993), 89 Ohio App.3d 522.]

Court of Appeals of Ohio,
Medina County.

No. 2199–M.

Decided July 21, 1993.

[redacted] 

[redacted]

---

*Dean Holman,* Medina County Prosecuting Attorney, for appellant.

*Richard McMannis,* for appellee.

---

REECE, Judge.

Plaintiff-appellant state of Ohio appeals the trial court's decision granting defendant-appellee Bret K. Waibel's motion to suppress. We reverse.

On February 3, 1992, Fred Wolk and Don Barker of the Medina County Task Force drove to Waibel's residence to interview him regarding cocaine sales in which he was involved. Waibel, a twenty-two-year old, part-time university student, was living at his parents' house. When the officers approached, Waibel was working on his girlfriend's automobile. The officers asked Waibel if he would speak to them regarding their investigation. Waibel stated that he did not

want his parents to know he was in trouble. Wolk offered to change locations but told Waibel it was voluntary because he was not under arrest. Waibel entered the officers' unmarked police vehicle and went to a church parking lot approximately five minutes from his home. At no time was Waibel handcuffed and the officers did not brandish any weapons.

At the church parking lot, Waibel was again informed that he was not under arrest and was read his *Miranda* rights. Waibel questioned whether he should have his attorney present but eventually decided to go ahead with the interview.

On May 6, 1992, Waibel was indicted on two counts of trafficking in drugs, R.C. 2925.03(A)(3) and 2925.03(A)(7), and permitting drug abuse, R.C. 2925.13. On October 28, 1992, he was indicted for kidnapping, which was consolidated with the drug offenses. Waibel moved to suppress the interview and a hearing was held January 11, 1993, on that issue. The court suppressed Waibel's statements and the state appeals, assigning as its sole assignment of error the court's decision to suppress this evidence.

At the hearing, the trial court stated that because Waibel asserted his right to counsel, it was not relevant whether he was "in custody" at the time of the interview. The state asserts that the court erred in not determining whether Waibel was in custody. We agree.

Waibel alleged, and the trial court found, that he attempted to assert his right to counsel. He could assert this right as a means of protecting his right against self-incrimination as was recognized in *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

In *Miranda,* the court stated:

"The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today." *Id.,* 384 U.S. at 469, 86 S.Ct. at 1625, 16 L.Ed.2d at 721.

Thus, the court in *Miranda* adopted the familiar warnings to protect the rights of individuals subject to custodial interrogation. Accordingly, the rights implicated in those warnings apply only in cases of custodial interrogation. The dangers the *Miranda* court felt inherent in custodial interrogation are evinced by the large portion of the opinion which outlined custodial interrogation practices. *Id.,* 384 U.S. at 444–455, 86 S.Ct. at 1612–1617, 16 L.Ed.2d at 707–712. *Miranda* itself recognized that the "compelling atmosphere" inherent in custodial interrogation may not be present in noncustodial settings. *Id.,* 384 U.S. at 476–477, 86 S.Ct. at 1628–1629, 16 L.Ed.2d at 725–726. We find the rights protected by

*Miranda* may only be raised in the custodial interrogations to which *Miranda* applies.

As this court has previously noted, *Miranda* requires that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. * * *" (Footnote omitted.) *Id.*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706; see *State v. Sublett* (Nov. 7, 1990), Medina App. No. 1914, unreported, at 3, 1990 WL 177462; *State v. Vinez* (June 10, 1992), Wayne App. No. 2687, unreported, at 4, 1992 WL 131397.

The cases since *Miranda* have focused on whether the criminal defendant was in custody and whether the defendant was subject to interrogation.

■ In the case at bar, the critical focus is on whether Waibel was in custody at the time of his interview with the police. The courts have not formulated a precise definition of a "custodial interrogation"; rather, they have mandated a case-by-case inquiry into how a reasonable person in the suspect's position would perceive his situation. *Sublett* and *Vinez, supra; Berkemer v. McCarty* (1984), 468 U.S. 420, 440–443, 104 S.Ct. 3138, 3150–3152, 82 L.Ed.2d 317, 335–336. Although any examination by police will have coercive aspects, *Miranda* rights are not required for everyone who is questioned. *Oregon v. Mathiason* (1977), 429 U.S. 492, 494–496, 97 S.Ct. 711, 713–714, 50 L.Ed.2d 714, 719.

■ The trial court failed to find whether Waibel was "in custody" at the time of the interrogation. Based on the foregoing, we find that the omission constitutes error. The issue of whether there was a custodial interrogation is a mixed question of law and fact and subject to plenary review. *Sublett, supra*, at 4, citing *United States v. Calisto* (C.A.3, 1988), 838 F.2d 711, 717–718, and *United States v. Hocking* (C.A. 7, 1988), 860 F.2d 769, 772. Because this decision is a question of law, we will exercise the authority granted by App.R. 12(B) to render judgment on this issue. *Superior Metal Products v. Ohio Bur. of Emp. Serv.* (1975), 41 Ohio St.2d 143, 145, 70 O.O.2d 263, 263–264, 324 N.E.2d 179, 180–181; *Bush v. Roelke* (Sept. 19, 1990), Lorain App. No. 90CA004800, unreported, at 14, 1990 WL 136058.

*Sublett* and *Vinez* are factually similar to the case at bar. In *Sublett*, at 8, the court noted the following factors which pointed to a noncustodial confession:

"The police vehicle in which the second and third interviews took place was unmarked and did not contain a cage. He was neither handcuffed nor subjected to a pat-down. Prior to both sessions, the detectives explained that he was not

under arrest and had no obligation to answer their questions. Although Sublett was seated in the back of an unmarked two-door police car, the interviews were conducted in a familiar neighborhood in a vehicle which was open to view. Sublett did not indicate that he was abused or manhandled in any way. The detectives were neither in uniform nor exposing weapons."

Nearly each of these factors was present in Waibel's case. Thus, absent any distinguishing characteristics, Waibel's case is controlled by *Sublett* and *Vinez*.

Waibel claims the fact that he was not permitted to call his girlfriend indicates he was in custody. Neither Vinez's attempt to call his father during the interview or Sublett's request to use the restroom, which were both denied, resulted in this court's finding a custodial interrogation occurred.

The only distinguishing factor between the three arrests is that the officers in Waibel's case read him his *Miranda* rights. If the *Miranda* rights were read without any other comment, they may cause a reasonable person to believe he was in custody. However, prior to reading those rights to Waibel, the officers twice told him he was not under arrest. We find it difficult to believe that a reasonable adult who was told he was not under arrest would still believe he was. Therefore, we find that Waibel was not subject to a custodial interrogation and that the trial court erred in granting his motion to suppress. The state's assignment of error is well taken.

The trial court's judgment is reversed and the cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

QUILLIN, P.J., and DICKINSON, J., concur.