[Cite as *State v. Hobbs*, 2011-Ohio-3192.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

JILLIAN DENISE HOBBS

    Appellant

C.A. No.     25379

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 09 09 2902

DECISION AND JOURNAL ENTRY

Dated: June 29, 2011

MOORE, Judge.

{¶1} Appellant, Jillian Denise Hobbs, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On September 16, 2009, after receiving a tip, three detectives from the Summit County Sheriff's Office visited Hobbs at her home to interview her regarding a recent burglary. Detective Scott Plymire testified that Hobbs invited them into her home. They informed her that they were investigating a burglary and that two witnesses had implicated her. Hobbs and her boyfriend, identified only as Mr. Gowdy, went outside and spoke privately. They walked around the side of the house in order to shield their conversation from the detectives. When they returned to the front of the house, Hobbs tearfully confessed that she had committed the crime because of her drug problem. Two of the detectives re-entered the house with Hobbs, Mirandized her, and inquired about the existence of drug paraphernalia in the home. Hobbs

directed the detectives to some heroin-related drug paraphernalia in the bathroom. The detectives placed Hobbs under arrest and transported her to the Summit County Jail. The detectives typed out a complaint, which they took to Sergeant Glenn Stott, also of the Summit County Sheriff's Office, to be "clerked."

{¶3} Sergeant Stott testified that he had taken a one-hour course in order to become a deputy clerk for the Barberton Municipal Court. He stated that "Detective Plymire later came to me with a typed affidavit that he had typed. I talked to him about the facts again. I asked if anything on the complaint and all the facts were true, and he swore to it, he did, and I clerked it." He testified that he made an independent probable cause determination based on Hobbs' confession.

{¶4} The complaint was filed with the Barberton Municipal Court the next morning. Detective Plymire testified that "[w]hen I type the complaint and it's clerked and it's sent to - - it becomes the warrant - - it becomes an arrest warrant once the Barberton clerk receives it." Hobbs was arrested on September 16, 2009, at approximately 6:30 p.m. On September 17, 2009, at approximately 6:52 a.m. the complaint was filed with the Barberton Clerk of Courts.

{¶5} On October 1, 2009, the Summit County Grand Jury indicted Hobbs on one count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree.

{¶6} On November 5, 2009, Hobbs filed a motion to suppress evidence and dismiss the charge on the basis that Sergeant Stott could not have acted as a neutral and detached magistrate. On December 2, 2009, the court conducted a suppression hearing. On February 25, 2010, the trial court denied the motion to suppress evidence and dismiss the charge.

{¶7} On March 29, 2010, Hobbs pleaded no contest to the burglary charge. The court found her guilty and sentenced her to two years of incarceration.

{¶8}  Hobbs timely filed a notice of appeal, raising one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

"THE TRIAL COURT ERRED IN DENYING [HOBBS'] MOTION TO SUPPRESS AND DISMISS BECAUSE IT DETERMINED FACTS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, BECAUSE IT APPLIED THE WRONG TEST OF LAW AND BECAUSE IT INCORRECTLY DECIDED THE ULTIMATE ISSUES ON MOTION TO SUPPRESS AND DISMISS."

{¶9}  In her assignment of error, Hobbs contends that the trial court erred in denying her motion to suppress and dismiss because it determined facts against the manifest weight of the evidence, applied the wrong test of law, and incorrectly decided the ultimate issues.  Although her route is indirect, Hobbs essentially argues that the motion to suppress and dismiss should have been granted.  We do not agree.

{¶10}  The State contends that at the trial court Hobbs failed to assert the specific grounds underpinning her motion to suppress and dismiss in violation of Crim.R. 47.  Accordingly, the State contends she waived her appellate arguments.  Although Hobbs filed a skeletal motion to suppress and dismiss with regard to several arguments, the State did not object or otherwise contend that it was uninformed as to the basis for her motion.  Accordingly, we will address the merits of Hobbs' arguments.

{¶11}  "Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court

must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8.

{¶12} In its order denying Hobbs' motion to suppress and dismiss, the trial court found the facts recounted above to be accurate. The court then observed that although the complaint appeared to be supported by probable cause, Sergeant Stott could not, in light of his position as a law enforcement officer, properly serve as a neutral and detached magistrate, citing *Shadwick v. Tampa* (1972), 407 U.S. 345, 350. The court determined that the arrest warrant, issued after Hobbs' arrest, was improperly issued. The trial court further determined however, that no evidence resulted from the improper procedure and thus, that there was no evidence to suppress. All of the evidence was independently discovered prior to the arrest and issuance of the warrant. Finally, the trial court ruled that dismissal of the burglary charge was inappropriate under this Court's holding in *State v. Reymann* (1989), 55 Ohio App.3d 222, 225, citing *United States v. Crews* (1980), 445 U.S. 463, 474 ("[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction").

{¶13} Upon review of the transcript, the trial court's findings of fact are supported by some competent, credible evidence. See *Burnside* at ¶8. The facts are not in dispute. Instead, Hobbs' contentions are more in the nature of challenges to the court's legal conclusions. Hobbs also contends that she was unfairly prevented from contesting the detective's statements as to what took place at her house. The record, however, reflects that Hobbs' counsel was given the opportunity to present evidence at the hearing. The following exchange took place between counsel and the court:

"[COUNSEL]: Here's the problem. I would call my client about the underlying circumstances of the arrest, but we're not challenging that.

> "THE COURT: No, I don't think it's really relevant.
>
> "[COUNSEL]: So I just want to clear -- I'm sorry, Your Honor. I want to make it clear for the record, we're not agreeing with that version that was given to you, but it's been stated, and we're not -- since we're not trying to suppress that. I want to thank you, Your Honor."

The exchange hardly reflects the trial court preventing Hobbs from contesting the underlying circumstances of the arrest. At the hearing, Hobbs' counsel seems to agree that her testimony is irrelevant to the suppression issue and makes no effort to call her to testify.

 A. *Suppression*

{¶14} With respect to suppression, Hobbs argues that "[a] strict chronological or linear view that evidence to be suppressed can only come after a *void arrest* warrant is erroneous." (Emphasis sic.) She then suggests that the exclusionary rule, as a remedy for Fourth Amendment violations, is a "circle of protection" as opposed to a horizontal line. Consequently, Hobbs contends that the detective's testimony before the grand jury should have been suppressed. Hobbs does not support these contentions with citations to authority. App.R. 16(A)(7).

{¶15} While the Eighth District Court of Appeals has held that a law enforcement officer from the same department serving a dual-role as an officer and deputy clerk of the local municipal court can properly serve as a neutral and detached magistrate, we are not persuaded by that authority. See, e.g., *State v. Garrett*, 8th Dist. Nos. 87112 & 87123, 2006-Ohio-6020; *State v. Robinson* (Oct. 24, 1985), 8th Dist. Nos. 49501, 49518 & 49577. Instead, we are inclined to agree with the Sixth District Court of Appeals in holding that in order for an arrest warrant to be valid, it must be issued by a neutral and detached magistrate. *State v. Torres* (Aug. 22, 1986), 6th Dist. No. WD-85-64, at *2, citing *Shadwick*, supra (holding that "[a] police dispatcher having the dual function of a clerk is not a neutral and detached magistrate").

{¶16} In this case, Sergeant Stott attempted to serve as a deputy sheriff and a deputy clerk of the Barberton Municipal Court. The trial court determined that, as a law enforcement officer "engaged in the often competitive enterprise of ferreting out crime," *Shadwick*, 407 U.S. at 350, citing *Johnson v. United States* (1948), 333 U.S. 10, 14, he was unable to serve as a neutral and detached magistrate for the purpose of making probable cause determinations. Additionally, we note that the Attorney General of Ohio has repeatedly advised prosecutors of various counties that law enforcement officers cannot serve as deputy clerks. See, e.g., 1995 Ohio Att.Gen.Ops. No. 95-020 (reasoning that such an arrangement was inappropriate because an employee of the county sheriff serving as a deputy municipal court clerk could be called upon "to determine whether the county sheriff or a deputy sheriff had probable cause to make a warrantless arrest"). Accordingly, the trial court determined, and we agree, that the arrest warrant issued pursuant to Sergeant Stott's probable cause determination was invalid. The trial court did, however, emphasize that Sergeant Stott did not appear to act partially. Likewise, the court did not find that probable cause was lacking to support the arrest. The trial court concluded that exclusion of evidence was not the appropriate remedy. We agree.

{¶17} The exclusionary rule has been applied by courts as an evidentiary remedy to certain Fourth Amendment violations. *Crews*, 445 U.S. at 470 ("the exclusionary sanction applies to any 'fruits' of a constitutional violation-whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention"). The exclusionary remedy, however, is not triggered by every infraction, and when it is, it is limited to the "fruit of the poisonous tree." *Wong Sun v. United States* (1963), 371 U.S. 471, 488.

{¶18} Hobbs contends that the exclusionary rule provides a circle of protection around criminal defendants and that the fact that she confessed to the crime *before* she was arrested does not preclude suppression and exclusion of evidence. We do not agree with this unsupported contention. "In the typical 'fruit of the poisonous tree' case * * * the challenged evidence was acquired by the police *after* some initial Fourth Amendment violation[.]" (Emphasis sic.) *Crews*, 445 U.S. at 471. The goal is to exclude evidence that flows from, and is the result of, the violation of a person's constitutional rights. We do not now endorse an application of the exclusionary rule to pre-violation conduct.

{¶19} At the suppression hearing, the State asked Detective Plymire about his testimony before the grand jury. Hobbs' counsel objected and the court sustained the objection. Even if we were to assume that grand jury testimony is potentially subject to suppression, without knowing what testimony was presented to the grand jury this Court can only speculate as to whether it constitutes fruit of the poisonous tree. The real gist of Hobbs' arguments before us seems to be that all evidence, particularly Hobbs' confession, should have been suppressed. Having rejected Hobbs' "circle of protection" theory, we conclude that the trial court correctly refused to suppress Hobbs' confession.

{¶20} The trial court determined that the procedure used by the deputy sheriffs in this case invalidated the warrant due to the lack of a probable cause determination by a neutral and detached magistrate. However, the trial court also correctly determined that no evidence was derived from the arrest and, accordingly, there was no evidence to suppress. Hobbs confessed to the commission of the burglary prior to the arrest. In fact, according to the detective's testimony, the arrest was predicated primarily upon her confession. That is, the confession led to the arrest. Therefore, the confession was not derived from the invalid arrest warrant. Under these

circumstances, the invalid arrest warrant could not flow back to invalidate a voluntary confession.

**{¶21}** Hobbs has argued, but has not separately assigned as error, App.R. 12(A)(2), that her confession was the product of a *Miranda* violation. This argument is unavailing because there is no evidence that she was subjected to custodial interrogation. "The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today." *Miranda v. Arizona* (1966), 384 U.S. 436, 469. "The cases since *Miranda* have focused on whether the criminal defendant was in custody and whether the defendant was subject to interrogation." *State v. Waibel* (1993), 89 Ohio App.3d 522, 525.

**{¶22}** In this case, the detectives visited Hobbs at her home and she invited them into the house. They informed her that they were investigating a burglary. Eventually, she went outside to smoke and to speak privately with Gowdy around the side of the house. At that time, the detectives also left the home and stood far from the couple to allow them privacy. Without prompting by the detectives, Hobbs returned from the side of the house and tearfully confessed to the burglary. No evidence from the suppression hearing suggested that Hobbs was not free to leave or otherwise terminate the conversation. Her confession was not, therefore, the result of custodial interrogation and *Miranda* does not apply.

**{¶23}** For the foregoing reasons, Hobbs' contentions with regard to suppression are overruled.

*B.*      *Dismissal*

{¶24} As a sub-argument of her motion to suppress, Hobbs contends that the trial court should have also dismissed the indictment with prejudice. Hobbs contends that Detective Plymire's grand jury testimony should have been, essentially, excluded from taking place and that, as a result, "[n]o testimony before grand jury [sic] means no indictment means no case. Dismissal follows." Hobbs cites to *State v. Lanser* (1924), 111 Ohio St. 23, for the proposition that "without the filing of a proper affidavit no jurisdiction is acquired." Hobbs reasons that dismissal must result due to the lack of jurisdiction. We do not agree.

{¶25} *Lanser* is inapplicable because it addresses only the jurisdiction of mayor's courts over "one accused of an offense before a justice of the peace, mayor, or police judge." Id. at 26. This case involves the felony jurisdiction of the court of common pleas. "The Court of Common Pleas is, by Section 2931.03, Revised Code, given original jurisdiction in felony cases. The felony jurisdiction is invoked by the return of a proper indictment by the grand jury of the county." *Click v. Eckle* (1962), 174 Ohio St. 88, 89. "'[I]t is now well established that even if an arrest is illegal it does not affect the validity of subsequent proceedings based on a valid indictment[.]'" *State ex rel. Jackson v. Brigano* (2000), 88 Ohio St.3d 180, 181, quoting *Krauter v. Maxwell* (1965), 3 Ohio St.2d 142, 144.

{¶26} "As to dismissal, the United States Supreme Court has stated that a criminal defendant 'cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. * * *'" *Reymann*, 55 Ohio App.3d at 225, quoting *Crews*, 445 U.S. at 474. Therefore, the invalid arrest warrant does not require the dismissal of the indictment.

**{¶27}** Accordingly, Hobbs' contentions with regard to dismissal are overruled.

III.

**{¶28}** Hobbs' assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

MARK H. LUDWIG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.